[No. 4586. Decided July 14, 1903.]

NORTHWESTERN WAREHOUSE COMPANY *et al., Respondents,* v. OREGON RAILWAY AND NAVIGATION COMPANY, *Appellant.*

CONSTITUTIONAL LAW — PREVENTION OF MONOPOLIES AND PREFERENCES
— SELF-EXECUTING PROVISIONS.

Art. 12, § 15, of the state constitution forbidding discrimination in charges or facilities for transportation to be made by any railroad company, and Id., § 22, prohibiting contracts between companies limiting the production or regulating the transportation of any product or commodity, are not self-executing, but are limited in their operation to such interpretations as have been given them by legislative enactment.

MANDAMUS — OMISSION OF LEGAL DUTY.

The writ of mandamus will not issue in anticipation of a supposed omission of duty, but it must appear that there has been an actual default in the performance of a clear legal duty then due at the hands of the party against whom relief is sought.

SAME — DENIAL OF TRACK CONNECTIONS BY CARRIER.

Under Bal. Code, § 4322, which provides that it shall be unlawful for any railroad to discriminate in charges or facilities for transportation, that every company permitting any one to connect a track with its track for the accommodation of any warehouse or elevator, etc., shall accord the same right to every other person soliciting it, which may be enforced by mandamus at the suit of any person entitled to such right, the owner of a warehouse or elevator cannot compel a railroad company to extend a spur of its track away from its existing tracks and over land not belonging to the railroad, when it has never done a like service to other shippers in the same line of business, but has confined its service to according them facilities for shipment by granting to them leases upon its right of way for the construction of elevators abutting upon its tracks.

SAME.

In a proceeding to enforce by mandamus a demand upon a railroad company for an extension of its track to plaintiff's warehouse, an alternative offer to accept from defendant a lease

of a portion of its right of way, in accordance with its policy in dealing with other like shippers, cannot be enforced as a demand for a lease, when the offer to accept a lease was too indefinite in its terms to be made the basis for a writ of mandate.

MONOPOLIES — RESTRICTION OF TRANSPORTATION FACILITIES.

A monopoly in the warehouse business in a locality is not shown by the fact that the business was restricted to locations upon the lands of a railway company, when it further appears that for years various persons owned and operated warehouses thereon, among them one of the plaintiffs, and that the right was open to the plaintiffs to engage in the business upon the same terms and with like facilities as were enjoyed by existing warehouses.

Appeal from Superior Court, Garfield County.—Hon. CHESTER F. MILLER, Judge. Reversed.

*Cotton, Teal & Minor, L. S. Wilson, H. F. Conner* and *Cosgrove & Russell,* for appellant.

*John J. Balleray* and *Gose & Kuykendall,* for respondents.

The opinion of the court was delivered by

HADLEY, J.—The respondents applied to the superior court of Garfield county for a writ of mandate directed to the appellant corporation, commanding it to give respondents track connection with its railway line at the city of Pomeroy, Washington, in such a manner as to furnish respondents the same shipping facilities claimed to be now furnished to other warehousemen and shippers at said city. The affidavit in support of the application shows that the respondent Northwestern Warehouse Company is a corporation organized under the laws of California, and has complied with the laws of Washington authorizing it to transact business in this state. The affidavit was sworn to by the respondent Cluster, who states that he is now constructing a large warehouse for the purpose

of receiving, storing, and shipping grain for the public for hire; said warehouse being located easterly of the terminus of the railway line of appellant at Pomeroy, upon lands which are particularly described, and alleged to be lying north of and contiguous to said railway line extending easterly from said terminus a distance of about 250 feet. It is also alleged that said warehouse has no track connection with said railway line, and no means of loading freight upon the cars of appellant, except by hauling the same thereto by wagon or other less convenient method; that the appellant is operating a railway line from the city of Portland, Oregon, to Pomeroy, Washington, and owns and operates the only railway at Pomeroy, and that there is no other railway in the county of Garfield, in which the city of Pomeroy is located; that about 2,000,-000 bushels of grain for export are annually produced in said county, and about 1,500,000 bushels are annually delivered at the various warehouses in Pomeroy for shipment, the same being annually shipped for hire by the appellant to Portland; that there is no other way of shipping said grain than over appellant's railway; that the present system of warehouses at Pomeroy will not hold to exceed one-half of the grain that will be delivered at said point for shipment during the present season (meaning the season of 1902); that the farmers of said county are now commencing to harvest a very large crop of grain, and not less than 1,500,000 bushels tributary to Pomeroy will be harvested within the next ninety days, and delivered at Pomeroy on the appellant's line of road for storage and shipment; that the delivery of grain at Pomeroy will commence about July 20th of the present year, and such delivery will be constant and rapid thereafter until the present crop is delivered; that the respondent Northwestern Warehouse Company owns the land upon which said

warehouse is being built, and has agreed to lease the same to the affiant, its co-respondent herein; that said warehouse will be ready for storing and shipping grain by August 1st of the present year. It is further averred that on June 24, 1902, the respondents notified appellant that they had ordered the material for the purpose of building a grain warehouse at Pomeroy, and that they were ready to commence the construction thereof; that they further informed appellant that they had secured the ground, and that the proposed warehouse would be located upon the lands mentioned, extending along and easterly of the present terminus of appellant's said line; that on said day the affiant, for himself and his co-respondent, demanded of the appellant an easterly extension of its present line of road a distance of about 250 feet, and offered to do the grade work at any time at the expense of respondents, and under the direction of appellant. It is further stated that they informed appellant that they desired the work done at once, as they intended to have the warehouse completed for receiving, storing, and shipping the grain crop then growing in said county, and that they would be ready to receive and ship the same by July 20th of said year; that they further notified appellant that they had secured the right of way for the extension of the track to their said warehouse, and that they consented to an extension of the line of road over such property; that they also demanded that appellant should make proper track connection with said warehouse, and have the same completed so that they could ship grain over said railway line commencing not later than July 20, 1902. It is further averred that at the time of making the demand above outlined respondents made the following offer in addition thereto, towit: That in lieu of the above demand they were willing to accept warehouse grounds having a length of 200 feet along said rail-

way line at any point on appellant's lands within given limits (which are designated in the affidavit), such grounds to be on the northerly side of said railway track. A further condition of such offer was to the effect that, if said lease should be made, it should embody such terms as would afford respondents reasonable shipping facilities, and that the territory included in the lease should extend northerly the full width of appellant's lands at that point. The refusal of appellant to comply with said demand or to accept said offer is alleged, and further allegations are made to the effect that for years past the appellant has leased its lands at and near the terminus of its said railway line contiguous to such line and its switches for warehouse purposes at a nominal cost to persons named and others unknown to respondents; that appellant has made for such persons, at their request and at appellant's expense, all switches and spurs necessary for track connection with its main line, so that they have ample facilities for shipping grain into and out of their said warehouses, and has during such years shipped to and from such warehouses, over its railway line, all the grain delivered at Pomeroy for shipment, aggregating many millions of bushels. Similar allegations are made relating to other persons and places along appellant's line of railway. It is further averred that in the manner aforesaid appellant is undertaking to and is discriminating against respondents in favor of said several persons, and is giving them unequal and unreasonable preference and advantage; that the course of appellant has resulted in, and will tend more to, the establishment of a monopoly in the warehouse and grain business at Pomeroy, and will stifle and restrain competitive business, to the great and irreparable injury of respondents, and to the detriment of the public.

The foregoing is an abbreviated statement of the ex-

tensive allegations contained in the application for a writ of mandate. A demurrer to the application was interposed, which was overruled, and appellant thereupon answered the application, denying many of its allegations, and alleging affirmatively, among other things, that said line of railway was constructed from Starbuck, Washington, to Pomeroy, Washington, in the year 1888, by the Oregon Railway & Navigation Company; that prior to the year 1894 said company constructed a side track on the north side of its main line of road in the city of Pomeroy, which side track was constructed entirely upon lands owned by said company, and acquired by it for the purpose of depot grounds; that said track was about 2,082 feet in length, and was constructed by said company at its own expense, for the purpose of affording yardage and switching facilities for the transaction of its business as a common carrier at its station at Pomeroy; that said track was at the time of its construction the sole property of said company, and continued so to be until August 16, 1896, when the ownership and possession thereof passed by sale to this appellant, the Oregon Railroad & Navigation Company, which is now the owner and in possession of the same; that at about the time of the construction of said track and afterwards warehouses were constructed by various persons, firms, and corporations contiguous thereto and upon portions of the depot grounds so owned by said Oregon Railway & Navigation Company, and by it leased to such persons, firms, and corporations, who constructed said warehouses; that this appellant has never permitted any person, company, corporation, or locality to connect a side track within the city of Pomeroy with its line of transportation for the accommodation of any mine, warehouse, elevator, mill, locality, or manufactory, and has never con-

structed any side or spur track within the city of Pomeroy
for the accommodation of such; that a certain track was
constructed by appellant at its expense, and entirely for
the convenience and assistance of citizens of Pomeroy who
had suffered heavy losses by fire, but that appellant de-
rived no revenue therefrom.  The allegations of the appli-
cation in regard to trackage accommodations at other points
than Pomeroy are denied.  It is further averred that the
site of the warehouse mentioned in respondents' applica-
tion was located arbitrarily, and without notice to appel-
lant, and without its knowledge or consent; that the lands
upon which said warehouse is being constructed are not the
lands of appellant, and the lands over which respondents
desire the extension of appellant's line of road constructed
are not the property of appellant; that, if the writ of man-
date sought should be granted, appellant will be required
to construct, maintain, and operate an extension of its
present main line of railroad track 250 feet in length upon
property not owned by it, will be deprived of ownership of
the rails and ties used in the construction of the same, and
will also be subjected to considerable expense in maintain-
ing and operating the same.  It is alleged that the said
warehouse is a private enterprise, in which only respond-
ents are interested, and that it would not in any way benefit
the public; that the present warehouse system at Pomeroy
located upon the grounds of appellant furnishes ample
facilities for the receipt, storage, and shipment of all grain
which, in the usual and ordinary course of business, is
delivered at Pomeroy for storage or shipment during the
course of any season; that the facilities furnished by ap-
pellant at Pomeroy for the receipt and shipment of grain
are now, and have been ever since the 16th day of August,
1896, when it became owner of said railway line, suf-

ficient and ample for the handling of all grain or other freight offered at its station in Pomeroy for shipment to other points reached by its rail lines, or to carriers connecting with its lines. The answer concludes with the statement that for the foregoing reasons, if the writ of mandate should issue as prayed, it would amount to a taking of appellant's property without due process of law, and would also deprive appellant of the equal protection of the laws, contrary to the provisions of the fourteenth amendment of the Constitution of the United States. A reply to the answer was filed, which consists chiefly of denials. Appellant moved to strike the reply, and the motion was denied. Under issues substantially as stated above, the cause was tried by the court without a jury, and a judgment was entered directing the issuance of a writ of mandate commanding appellant within twenty days to furnish the material for and construct over the strip of land described an extension, spur, or side track to the warehouse of respondents. This appeal is from said judgment.

One hundred and fifteen separately stated assignments of error are set out in appellant's brief. It is manifestly impracticable to discuss them all in a comprehensive way. Under our views, we believe a discussion of a somewhat general nature will best serve the purposes of the case. It is urged that at the threshold of the case the demurrer to the application for the writ of mandate should have been sustained. The evidence is, however, before us, and we shall consider the case upon its merits, including reference to the evidence for that purpose. To support the application for the writ asked, respondents rely upon §§ 15 and 22 of article 12 of the Constitution of Washington, and upon a provision of a legislative act of 1897 as found in § 4322, Bal. Code. The sections of the constitution are as follows:

"Sec. 15. No discrimination in charges or facilities for transportation shall be made by any railroad or other transportation company between places or persons, or in the facilities for the transportation of the same classes of freight or passengers within this state, or coming from or going to any other state. Persons and property transported over any railroad, or by any other transportation company, or individual, shall be delivered at any station, landing or port at charges not exceeding the charges for the transportation of persons and property of the same class, in the same direction, to any more distant station, port or landing. Excursion and commutation tickets may be issued at special rates."

"Sec. 22. Monopolies and trusts shall never be allowed in this state, and no incorporated company, copartnership or association of persons in this state shall directly or indirectly combine or make any contract with any other incorporated company, foreign or domestic, through their stockholders, or the trustee or assignees of such stockholders, or with any copartnership or association of persons, or in any manner whatever, for the purpose of fixing the price or limiting the production or regulating the transportation of any product or commodity. The legislature shall pass laws for the enforcement of this section by adequate penalties, and in case of incorporated companies, if necessary for that purpose, may declare a forfeiture of their charter."

The statutory provision is as follows:

"It shall be unlawful for any railroad company or other common carrier doing business in this state, its agents or employees, on business wholly within this state, to make or give any unequal or unreasonable preference or advantage to any particular person or persons or company or corporation or copartnership or locality, or to any particular description of traffic in any respect whatever, or to subject any person or persons or corporation or company or copartnership or locality, or any particular description of traffic to any unequal or unreasonable prejudices or disadvantages in any respect whatever, and every railroad company or

other common carrier doing business in this state, which permits any person or persons or company or corporation or any locality in this state to connect a side track with its track or line of transportation for the accommodation of any mine or warehouse or elevator or mill or manufactory, shall accord the same right on the same terms to every other person or company or corporation or copartnership anywhere on its line in this state soliciting such right or privilege; this right shall be compelled by the courts of this state by the writ of mandate at the suit of any person or persons entitled to such right under this article: provided, that nothing herein contained shall prevent the classification of freight, as to kind, value and quality and the basing of rates thereon."

The statute was evidently intended to give active force to the constitutional provisions. It cannot be said that the makers of the constitution understood § 22, above quoted, to be self-executing, since they expressly provided that the legislature shall pass laws for its enforcement. Since the constitutional convention itself so interpreted the section, it is the manifest duty of the courts to adopt that interpretation. While § 15, quoted above, does not in terms expressly state that the legislature shall pass laws to enforce it, yet it relates somewhat to the same general subject-matter as § 22.

In *Long v. Billings,* 7 Wash. 267 (34 Pac. 936), this court held that § 16 of article 1 of the Constitution of Washington, which provides for the taking of lands for private ways of necessity, is not self-executing, and that, before the right to such taking can arise, the legislature must first define what are to be private ways of necessity, and must prescribe the method by which the necessary land can be taken. By analogy it would seem to follow that under the provisions of the sections above quoted the legislature must first define what shall be deemed to be "discrim-

ination in charges or facilities for transportation," and shall prescribe the method by which such discrimination shall be prevented. Acting upon that theory, the legislature enacted the provisions of § 4322, *supra,* and provided for the enforcement of its provisions by the writ of mandate. The legislature has, therefore, construed this section of the constitution as not being self-executing, and we think its construction the correct one. It follows that whatever rights the respondents have in the premises must be determined by the terms of the statute in so far as its terms give vital force to the constitutional provisions, and that the courts cannot enlarge upon the statutory provisions, even though the legislature might possibly do so within the constitutional limitations.

For the reasons hereinbefore stated, the next question for determination is, have the respondents brought themselves within the terms of the statute cited so as to entitle them to the relief asked? The relief sought is against what is claimed to be an unequal or unreasonable preference or advantage in relation to railway transportation facilities for warehouses. To warrant the writ of mandamus, there must exist a clear legal right to have a decision in respect to the thing sought. Wood on Mandamus (3d ed.), pp. 54, 55. The writ will not issue in anticipation of a supposed omission of duty, but it must appear that there has been an actual default in the performance of a clear legal duty then due at the hands of the party against whom relief is sought. High, Extraordinary Legal Remedies (3d ed.), § 12; *State ex rel. Piper v. Gracey,* 11 Nev. 223; *People ex rel. Butler v. Supervisors,* 26 Mich. 22; *People ex rel. Besse v. Village of Crotty,* 93 Ill. 180. Was appellant, at the time this application was made, in default in the performance of a clear legal duty

in the premises? It will be observed that the statute does not charge appellant with the absolute duty to permit others to connect side tracks with its track or line of transportation. That duty arises only when it has permitted such connections to be made, in which event it shall accord like facilities to others. It is not mandatorily provided that the policy of permitting such connections shall be inaugurated in the first instance, but, if a railroad company shall, of its own volition, establish such a policy by permitting connections of side tracks to be made, then it shall accord the same right, and on the same terms, to others who may solicit the privilege. The evidence in this case does not show that appellant has ever permitted any person, company, corporation, or locality in this state to connect a side track with its line of transportation for the accommodation of any warehouse. It does appear, however, that all its accommodations in the way of trackage facilities to warehouses are furnished by way of its own side tracks and connections constructed upon its own land. Under the statute there is, therefore, no duty now existing to permit persons to connect their side tracks with appellant's line. Respondents, however, do not seek to connect their own track, but they ask that appellant shall be required to construct a track leading to their warehouse, which is located upon their own private property. There is nothing in the statute which imposes upon appellant the duty to build such a track. If the statute in terms so provided, it would then become necessary for us to examine into the contention of appellant that such a requirement would be in contravention of the terms of the fourteenth amendment of the Constitution of the United States, in that it would amount to a taking of private property without due process of law, and to a denial of the equal protec-

tion of the laws. We need not enter upon that examination, however, since the statute, by its terms, does not purport to require the building of such side tracks for the accommodation of others, but is limited to the requirement that, when permission has been given to connect the side tracks of others, like permission shall be given to those who may thereafter apply, and on the same terms. The evidence shows that the location of respondents' warehouse is to the eastward of the present terminus of appellant's line of road, and to reach it with a track would require the extension of the line a distance of about 250 feet, and over land which does not belong to appellant. There is considerable evidence to the effect that the construction of such extension would require the removal and reconstruction of a platform now upon appellant's land, and used by it for loading and unloading heavy machinery. The site for the location of the warehouse was selected by respondents arbitrarily, and without any consultation with appellant, and without its knowledge or consent. Under these conditions a demand was made, about the time this cause was commenced, for the construction of the extension asked. No offer or tender of title to a right of way for the extension is alleged or shown to have been made at that time. Appellant was simply notified that respondents had secured the right of way and consented to an extension of the line over such property. They offered to do the grading, but demanded that appellant should furnish the necessary material and otherwise construct the extension upon this land over which they merely consented the extension might be made. After the proceeding was begun, and during the trial, they filed a deed for the right of way, but it was not an absolute tender, since it was conditioned upon the building of the extension. At the time of the demand

and at the beginning of the suit there was no showing that appellant could acquire the title to the land over which respondents demanded the construction of the extension. Under any view of the requirements of the statute, it certainly cannot be contended that appellant could have been required to build a track over land it did not own, or that it was under the duty to go out and buy a right of way for that purpose, not even knowing that such purchase could be made. Such was the situation at the time of respondents' demand and when the suit was begun. We think respondents' right to the writ of mandate must be fixed, in any event, by the nature of their demand. The subject-matter was such that appellant could not know that such an accommodation was desired, or the nature of it, until it was made known and specifically stated. Conceding, then, for the moment, that the statute may have the force contended for it by the respondents, still they were not in position to demand the writ when this action was begun, for the reason that appellant was not actually in default in the discharge of a duty properly demanded. But in no event do we believe that the statute can be construed as requiring appellant to extend its line of road in the manner and under the circumstances shown in this case and as detailed above. If it could be required to build 250 feet of extra road away from its own property and established grounds, then, in principle, why might it not be required to build a much greater distance, even to the extent of a mile or more? We shall not presume that such an intention existed in the legislative mind in the absence of a clear expression that such was intended.

It will be remembered that the affidavit alleges that at the time the above-mentioned demand for an extension was made an offer in the nature of an alternative was also

made in lieu of the extension demanded.  The terms
of the offer were to the effect that respondents would ac-
cept a lease of a stated portion of appellant's grounds
contiguous to one of its side tracks now existing.  The
offer, was, however, conditioned that, if a lease should
be made, it should, by its terms, provide that respondents
should have "reasonable shipping facilities," and, further,
that the leased premises must extend the full width of
appellant's lands to the northward.  There was no speci-
fication of terms as to what respondents deemed to be rea-
sonable shipping facilities, or as to what they would de-
mand or require in that particular.  It was, therefore,
impossible for appellant to know from the offer what
would be expected of it in the premises suggested by the
offer to accept the lease.  Even if the duty arose under
the statute for appellant to grant a lease to respondents
because of the existence of leases to other warehousemen
upon appellant's lands, still what occurred in reference
to a lease was a mere offer, and not a demand, and the
offer was of such an indefinite nature, even if it had been
in the form of a demand, that we think no duty arose
to comply with it.  The thing actually demanded was an
extension of the line, and not a lease.  There is much evi-
dence in the record to the effect that the moving of ap-
pellant's cars in its necessary operations upon its depot
grounds would become so involved if cars should be placed
for the accommodation of a warehouse upon the proposed
lease site that it would endanger the persons of its em-
ployees so conducting the operation of cars.  Be that
as it may, however, for reasons stated above we do not
think a writ of mandate can issue in this action com-
pelling the execution of a lease.

We do not think the evidence shows that a monopoly

in the warehouse business exists at Pomeroy within the
meaning of the constitutional sections quoted above or
of the statute cited.    It appears that for years various
persons have owned and operated warehouses located upon
appellant's lands at that point.   At the time this suit was
begun and tried four separate warehouses were in opera-
tion there, and only a few weeks before that time respond-
ent Cluster had owned an interest in two warehouses at
Pomeroy, which he had sold.    Respondents have the un-
doubted commercial and legal right to enter into compe-
tition with other warehousemen, but it seems to be their
misfortune that they have built a warehouse so located
that they have not the facilities for shipping therefrom
which they desire.   It .does not necessarily follow, how-
ever, that they may not be entitled under the statute to
the same facilities and upon the same terms that are
accorded to other warehousemen, unless it should appear
that the same cannot be furnished within reasonable con-
ditions.    This action was so brought, however, as we have
seen, that we cannot now determine what rights respond-
ents may have in that regard, if any.

The judgment is therefore reversed, and the cause re-
manded, with instructions to the lower court to enter
judgment denying the writ of mandate.

FULLERTON, C. J., and MOUNT, ANDERS and DUN-
BAR, JJ., concur.