# APRIL, 1909.

MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS V.
JAS. A. THOMPSON.

Decided April 1, 1909.

**1.—Action—Statutory Penalties.**

In an action to recover penalties imposed by statute, plaintiff can recover only by showing that the acts complained of come within the very terms of the statute, and these will not be extended to embrace acts not covered by their language, though those acts be wrongful.

**2.—Railways—Discrimination—Delivery to Connecting Road—Routing by Shipper.**

The obligation imposed upon a railway by Article 4574, Revised Statutes, to transport and deliver freight destined to any point on a connecting line without delay or discrimination, is complied with by the physical delivery of same to the connecting carrier. That in disregard of the routing of such freight by the shipper it compels the connecting line to transport by a route different from that so designated, though a default in its duty at common law to respect the shippers' routing, is not a violation of the statute or an unjust discrimination within its terms and does not subject it to the statutory penalties.

**3.—Same—Case Stated.**

Plaintiff, a dealer at Taylor on the I. & G. N. Railroad, purchased lumber from mills at Willard on a line of defendants road running from Trinity to Colmesneil. The sellers at his demand shipped it with written directions to deliver at Trinity to the I. & G. N. Railroad for transportation over its lines from Trinity to Palestine and thence to Taylor. Besides this route two others were available, each giving the defendant road a larger proportion of the haul and division of the rate, which was the same for each of the three routes, than did the one selected by the shipper. These were by defendant's line to Trinity, thence by the I. & G. N. to Houston, and by defendant's line to Taylor, or by defendant's road to Corrigan, thence by the H. E. & W. T. Ry. Co. to Houston, and from there by defendant to Taylor. By agreement between defendant and the I. & G. N., the latter road disregarded the shipper's routing by Palestine and, following the directions of defendant's way bills, carried all such shipments to Houston and delivered them there to defendant to complete the transportation. It was compelled or induced to do so by defendant's threat to divert the shipments to Houston by way of the H. E. & W. T. Ry. if it refused. Held, that such refusal by defendant to respect the routing designated by the shipper was not an unjust discrimination against him within the meaning of article 4574, Revised Statutes and did not subject defendant to the penalties prescribed for violating that article.

**4.—Carrier—Contract.**

Defendant, having refused to accede to the contract to carry the goods by the route designated by the shipper, had assumed no obligation by contract to forward by such lines. The gist of its offense was in its requiring the connecting line to transport by another route, and this, though a failure to perform its common law duty, was not an act for which the penalties of the statute against discrimination were imposed. San Antonio & A. P. Ry. Co. v. Stribling, 99 Texas, 319, distinguished.

**5.—Mandamus—Carrier—Shipper's Routing.**

Mandamus will only issue to compel the performance of an existing legal duty, as for a carrier to issue a written bill of lading for goods when required (Rev. Stats. art. 322). It does not lie to compel the issuance of a bill showing the

routing desired by the shipper or to so bill the goods as to deliver to a connecting carrier with the goods such shipper's routing instructions, there being no such legal duty resting on the carrier.

#### 6.—Same—Anticipating Duty.

Mandamus will not lie to compel a carrier to make a certain form of contract with respect to goods intended by plaintiff to be tendered to it for transportation in the future or to carry out the directions of the shipper as to routing such goods, though it has repeatedly refused to do so in the past and the shipper expects to continue his shipments and demands for a certain routing in the future. The duty arises only when the goods are offered for transportation.

Appeal from the District Court of Travis County. Tried below before Hon. Chas. A. Wilcox.

*Fiset & McClendon* and *D. K. Woodward, Jr.,* for appellant.

*Cochran & Penn,* for appellee.

For briefs of counsel see the report of this case on writ of error in the Supreme Court.

HODGES, ASSOCIATE JUSTICE.—This suit was instituted by the appellee to recover penalties for unjust discrimination provided for in art. 4574 of the Revised Civil Statutes.

*Findings of Fact.*—At the time of filing this suit, and for some years prior thereto, the appellee was engaged in the business of re-tailing lumber at Taylor, in Williamson County, Texas. He purchased a large amount of his lumber from the Thompson-Tucker Lumber Company at its mills at Willard, a small station situated on the line of the appellant railway company running from Trinity, in Trinity County, through Corrigan, in Polk County, to Colmesneil, in Tyler County. On different dates between April 1, 1906, and September 5, 1907, the appellee purchased of the aforesaid lumber company fifty-seven carloads of lumber delivered f. o. b. the cars at Willard, for the purpose of having the same shipped to him at Taylor, and which was thereafter so shipped and delivered on different dates during that period of time. There were three routes by which such shipments could be made from Willard to Taylor; one over the appellant's T. & S. line to Trinity, thence over the I. & G. N. Railway to Houston, and from there over another line of the appellant's to Taylor; another from Trinity over the I. & G. N. Railway to Palestine, and thence over the same company's line to Taylor; still another from Willard to Corrigan, thence over the Houston, East & West Texas Railway to Houston, and from there over the appellant's line to Taylor. The distances from Willard to Taylor over these respective routes were as follows: Over the first mentioned 278 miles; the second, 236 miles; and the third, 272 miles. Over each route the Railroad Commission had established a rate, which was the same for all. The appellee had for some time previous to the first mentioned date, and during all of the time the shipments were made desired that his lumber should be carried over the appellant's line to Trinity, thence over the I. &

G. N. Railway via Palestine to Taylor, claiming that it reached its destination by that route in a shorter time, and for other personal reasons. Acting for him in the method of routing the shipments, the agent of the Thompson-Tucker Lumber Company, on the several occasions when each of the fifty-seven cars of lumber were to be delivered to the appellant for shipment, and before they were received by the appellant at Willard, tendered to the appellant's agents in charge of the trains upon which the cars were to be shipped, duplicate receipts upon the following blank form:

"Willard, Texas..............190..

Delivered by

### THOMPSON & TUCKER LUMBER COMPANY
#### To M., K. & T. R. R. Co.

In apparent good order, the articles named below, to be delivered in like good order, without unnecessary delay.

To ...............................................................
At ...............................................................
Via ...............................................................
Marks ...............................................................

As per conditions of Company's Bill. of Lading.

.................................... Lumber.

| Initial. | Car No. |
|----------|---------|
| ........................ | ........................ |
| ........................ | ........................ |
| ........................ | ........................ |
| ........................ | ........................ |
| ........................ | ........................ |
| ........................ | ........................ |
| ........................ | ........................ |
| ........................ | ........................ |
| ........................ | ........................ |

.................Conductor.

Train No.......... .................190."

The blanks "To," "At" and "Via" in each of the fifty-seven receipts were filled in in pencil so as to read "To *order J. A. Thompson, Taylor, Tex., c/o I. & G. N. Ry. Co. At Trinity, Tex., for continuous transportation by I. & G. N. Via Trinity, Palestine and I. & G. N. Ry.*" In the shipment of January 10, 1907, all the words in pencil (italics above) were erased; in twenty-four of the shipments the words "for continuous transportation by I. & G. N. (via) Trinity, Palestine and I. & G. N. Ry." were erased; and in the balance the words "Trinity, Texas, for continuous transportation by I. & G. N." (via) "Trinity, Palestine and I. & G. N. Ry." were erased.

The bill of lading referred to in the above mentioned receipt was that found on one of the blank forms in general use by the appellant railway company. Among other provisions, that form contains an undertaking on the part of the appellant to deliver the freight at the point of destination if that point is on its line; if not, then to deliver to its next connecting carrier, and also a provision limiting its liability for damages to that which occurs upon its own line.

There was no local agent at Willard, and the bills of lading, or receipts, as they were called, were signed by the conductors in charge of the trains. The receipts were usually tendered by an agent of the lumber company called the "shipping clerk." This clerk was not present upon all of the occasions when the cars and receipts were tendered to the appellant for transportation. In most of the instances, whether present or not, a note was attached to the duplicate receipts left for the conductor to sign, in which he was requested that unless he would handle the cars according to the routing instructions given in the receipts not to undertake to handle them at all. The officials in charge of the management and control of the appellant's line were well aware of the desire of the appellee that the cars containing his lumber should be routed by way of Trinity and Palestine over the I. & G. N. Railway to Taylor; and the agents of the lumber company, at the time they tendered the duplicate receipts above referred to, in addition to the note attached, verbally requested that those wishes be carried out. The conductors, however, acting under orders from their superiors, disregarded those instructions, made the erasures before mentioned, and after doing so signed the receipts and delivered them to the shipping clerk of the lumber company if he was present, and if not, left them where they could be obtained by him upon his return, and then would take charge of the car, transport it to Trinity and there deliver it to the I. & G. N. Railway Company, accompanied by a way-bill providing for its carriage to Houston, and there to be delivered again to the appellant for shipment to Taylor.

The court found that the appellee accepted those receipts as signed after the erasures showing the routing via Palestine had been made, and allowed the appellant to take charge of the cars of lumber with no routings except those remaining upon the receipts as shown. The testimony is sufficient to show that the desire of the appellee to have his cars containing the lumber shipped from Willard to Taylor routed by way of Palestine over the I. & G. N. Railway, while well known to the appellant and the officials in charge of that department of its business, had been uniformly disregarded, and all of the fifty-seven cars were routed by way of Trinity and Houston and thence over the appellant's main line to Taylor. The reason given by the appellant's general freight agent was that he desired his company to get the benefit of the long haul from Houston to Taylor, which it would not do if the routing was by way of Palestine over the I. & G. N. Railway. At the time these shipments were made there was in effect between the appellant and the I. & G. N. Railway Company a traffic agreement by which it was understood between the two companies that all freight originating on the appellant's T. & S. branch and destined to points on or over appellant's line south of Waco should be carried by way of

Houston. This traffic agreement was then on file with the Railroad Commission, but there was no other evidence of whether or not it had been approved by the Commission.

Sometime previous to the date of any of the shipments here under consideration there had arisen between the appellant and the appellee a similar controversy concerning the routing of his lumber from Willard to Taylor. This controversy ultimately resulted in a suit by appellee for the statutory penalties, but the litigation was settled by compromise. During the time of that controversy the general freight agent of the appellant had informed the freight agent of the I. & G. N. Railway Company that if the latter company did not respect appellant's routing of shipments originating at Willard destined to Taylor by way of Houston, all of the freight originating at Willard would be carried by way of Corrigan over the H. E. & W. T. Railway to Houston, thus diverting that traffic from the I. & G. N. Railway Company. By reason of this threatened diversion of the traffic the I. & G. N. Railway Company thereafter followed the routing indicated in the waybills delivered to it by the appellant company. The refusal of the appellant to deliver the fifty-seven cars of lumber to the I. & G. N. Railway Company with appellee's routing instructions contained in the receipts made out at Willard is the basis of this suit.

*Conclusions of law.*—The petition is very voluminous, but avers the facts substantially as stated above. From a judgment in favor of the appellee for penalties aggregating $8,550, and a judgment awarding a writ of mandamus compelling the appellant at all times in the future when the appellee shall tender to it on its line of railway at Willard any lumber in carload lots for shipment from that point to Taylor, at the freight rate established by the Railroad Commission, with directions to appellant given at the time of such tender that the same shall be carried by it over its line of road to Trinity and there delivered to the I. & G. N. Railway Company for carriage by it by way of Palestine to Taylor, to receive such shipments so tendered and to issue to appellee its receipt or bill of lading therefor, specifying the routing thereof given by the appellee, and further directing upon such receipts of any such shipments from plaintiff with such directions and routing instructions, to carry such shipments of lumber over its line of railway to Trinity and there deliver the same to the International & Great Northern Railway Company, together with the routing instructions above referred to, this appeal is prosecuted.

Counsel for appellee thus states the proposition upon which he relies for a recovery in this case: "We contend that the instruction given by the appellee in the receipt tendered by him for each shipment, and the instructions given by the appellee to the appellant at the time of each shipment in addition to those contained in the receipt tendered, remain binding upon the appellant, notwithstanding the erasures by appellant of the routing in the receipt tendered, since no other routing was agreed to by appellee; and that when the appellant carried the shipment to Trinity and there delivered it to the I. & G. N. Railway Company, representing to said company that such shipment was routed by way of Houston, and demanding of said I. & G.

N. Railway Company as a condition upon which said shipment should be delivered to it that it should carry the shipment to Houston and there deliver it back to appellant, thus giving a routing instruction different from that given by the appellee and imposing upon the I. & G. N. Railway Company a condition which it had no right to exact, . . . appellant was guilty of unjust discrimination." Upon the correctness of that proposition he relies for an affirmance of this judgment.

Article 4574 of the Revised Civil Statutes, which defines the character of "unjust discrimination" here complained of, in subdivision 2 contains the following provision: "Every railroad company which shall fail or refuse, under such regulations as may be prescribed by the commission, to receive and transport without delay or discrimination the passengers, tonnage and cars, loaded or empty, of any connecting line of railroad, and every railroad which shall, under such regulations as may be prescribed by the commission, fail or refuse to transport and deliver without delay or discrimination any passengers, tonnage or cars, loaded or empty, destined to any point on or over the line of any connecting line of railroad, shall be deemed guilty of unjust discrimination; provided, perishable freights of all kinds and live stock shall have precedence of shipment." There are other provisions of the statute which prescribe the penalties that may be recovered by the aggrieved party on account of any violation of those requirements.

The question then is: Did the appellant violate the provisions of this statute defining "unjust discrimination?" By the terms of the article referred to appellant was required to receive and transport without delay or discrimination the cars for any connecting carrier, and was prohibited from failing or refusing to transport and deliver without delay or discrimination cars destined to a point on or over the line of any connecting carrier. Under the well-established rule for the construction of penal statutes, such as that here under consideration, the appellee would be entitled to recover penalties only by showing that the acts complained of come within the very terms of the statute; and these will not be extended so as to embrace acts not covered by their language, although those acts be wrongful. San Antonio & A. P. Ry. Co. v. Stribling, 99 Texas, 319, 89 S. W., 963; Hill & Morris v. St. Louis S. W. Ry. Co., 75 S. W., 874; Schloss v. Atchison, T. & S. F. Ry. Co., 85 Texas, 601, 22 S. W., 1014. It is not here insisted that there was any delay or discrimination in receiving and transporting the cars on the line of the appellant, or that there was any failure or refusal to deliver the cars without delay to the I. & G. N. Railway Company, the connecting carrier in this instance. Unless we hold that the conduct of the appellant amounted to a violation of the duty to deliver without "discrimination," no offense for which a penalty may be recovered is charged or shown. The term "discrimination" as used in the requirement that carriers "shall deliver without delay or discrimination," etc., is only a part of the statutory definition of what it takes to constitute "unjust discrimination," and must be taken in its ordinary acceptation and to mean a delivery without showing any preference in favor of or against a shipper in the performance of

any act essential to the completion of that service. It has been held that the terms "delay" and "discrimination" as used in this article are convertible, and that discrimination means delay. Gulf, C. & S. F. Ry. Co. v. Lone Star Saw Co., 26 Texas Civ. App., 531, 63 S. W., 1025. The duty which devolved upon the appellant as a common carrier when it received the appellee's cars of lumber destined to a point on another line of railroad was to deliver the same to its connecting carrier in accordance with the statutory requirements. The terms of the statute do not exact anything more than that the physical delivery of the cars or freight shall be done without delay or discrimination. When this was done its statutory duty was performed. There is no complaint that this service was performed in a manner showing a preference in favor of other shipments or shippers, or that in the physical handling of the cars by the appellant the delivery was not made according to the requirements of law. Where, then, is the offense? The appellee contends that it lies in the fact of the appellant's giving a routing different from that embodied in the instructions delivered to it at the time the freight was received at Willard; that the erasures made by the appellant's conductors in the receipts tendered them for signature at the time the cars were delivered did not change the legal effect of those instruments, and that the freight was in fact received routed via Palestine to Taylor over the I. & G. N. Railway Company from Trinity. We may concede this contention to be correct; and may also concede that the traffic agreement between the appellant and the I. & G. N. Railway Company by which all freight originating on that line destined to points south of Waco should be carried by way of Houston, was insufficient to justify either road in insisting on carrying these cars by way of Houston over the objection of the appellee. Still, this would not constitute a statutory offense on the part of the appellant, although it might as to the other carrier. That the owner generally has the right to designate the route over which his goods shall be transported is well settled. Inman & Co. v. St. Louis S. W. Ry. Co., 14 Texas Civ. App., 39, 37 S. W., 37; Gulf, C. & S. F. Ry. Co. v. Irvine, 73 S. W., 540. It may also be admitted that there is a duty resting upon the receiving carrier to transmit and deliver to its connecting carrier the routing instructions under which the goods are being transported. This duty, however, is one which grows out of the particular contract of carriage, or is one imposed as the common law obligation of the carrier, and does not result from a statutory requirement. Hence, no penalty can be recovered for its breach. In the Stribling case, above referred to, the Supreme Court held that while it was a wrong for the carrier to deny the owner the right to designate the route his freight should be carried, it was not one for which the statute had provided a penalty. The statutory definition of "unjust discrimination" no more includes the wrongful conduct of refusing to deliver to the connecting carrier the routing instructions of the owner than it does the offense of refusing to permit the owner in the first instance to name the route to be taken by the shipment. Whatever the contract of shipment provides, whether verbal or written, under which the freight is carried, determines the route and connections to be observed. In this case it can not be said that the ap-

pellant received the lumber for shipment via Palestine in the face of its positive and express refusal to do so. Whatever might be implied from its conduct in accepting the freight for shipment with the notice not to take the cars unless it would handle them according to the routing instructions of the owner, is negatived by the specific act of the appellant's agents in each instance erasing a stipulation to that effect from the bills of lading, and in its repeated express refusals to route those cars by way of Palestine, as desired by the appellee. This practice had continued for such a length of time that, as one of the witnesses stated, the demand for the routing by way of Palestine became a mere matter of form. It is also in evidence that this persistent refusal on the part of the appellant antedated these shipments by several months, and had at one time resulted in a suit for penalties growing out of shipments being diverted to the line of the Houston, East & West Texas Railway. The evidence also justifies the conclusion that the I. & G. N. Railway Company was fully cognizant of the wishes of the appellee to have his freight routed by way of Palestine, and of the controversy with appellant, and yielded to the demand of the appellant to carry by way of Houston and there redeliver solely on account of the fear of losing all of the shipping from Willard. The court found that after the appellant had refused to route the cars according to the wishes of the appellee he then permitted appellant's agents to take the cars for shipment. If so, he must have acquiesced in the routing actually given by the carrier. The conclusion of counsel for appellee that the erasures did not alter the routing under which the cars were ultimately carried is not sustained. When a shipper accepts a bill of lading, with knowledge of its contents, it becomes binding upon him. Gulf, C. & S. F. Ry. Co. v. Batte, 94 S. W., 345; 1 Hutch. on Carriers, section 171. The freight was promptly delivered to the I. & G. N. Railway Company; its destination was Taylor, a point on the line of that road. Under the provisions of article 4535 of the Revised Civil Statutes, it became the duty of the I. & G. N. Railway Company, upon the receipt of the freight destined for that point, to transport it over its line to its destination, unless the party having a right to do so had routed it otherwise. The gist of the offending committed by the appellant, therefore, seems to consist not in failing or refusing to deliver the freight to its connecting carrier without delay or discrimination, but in exacting from the latter as a condition upon which it should receive the freight that the same should be transported over a different route from that selected by the owner. Pushing this contention to its ultimate analysis, it amounts simply to a charge that the appellant wrongfully induced the I. & G. N. Railway Company, its connecting carrier, to violate its statutory duty, and forced that road to carry the freight over a different route and deliver to a different connection from that demanded by the owner. No penalty is provided by statute for such conduct as that charged against the appellant, even though it may be violative of the shipper's rights. San Antonio & A. P. Ry. Co. v. Stribling, supra.

Counsel for appellee insists that the Stribling case above referred to supports their contention in this suit. We do not think the analogy between the facts of that case and those here involved is sufficiently

strong to make the ruling there in all respects decisive of this. In that case the controversy arose between the S. A. & A. P. Railway Company and the plaintiff in the suit regarding the shipment of four carloads of hogs from Kerrville to Graphite. The above-named railroad company was the initial carrier, and refused to route the cars according to the wishes of the shipper. The latter desired them carried over the road of the defendant in the suit to San Antonio, there delivered to the I. & G. N. Railway Company to be carried to Austin, and from there over the H. & T. C. Railway Company to Graphite. The carrier insisted upon routing them by way of San Antonio, thence to Giddings over its own road, there to be delivered to the H. & T. C. Railway Company to be carried to their destination. Three of the cars were shipped under bills of lading signed by the shipper according to the route selected by the carrier. The shipper testified that he signed the bills without reading them, and did not agree to the routing therein specified. The court, however, held that those were the contracts under which the shipments were made, and that notwithstanding the shipper had the right to select the routing of his freight in this instance, he had in fact entered into a contract which routed them according to the way they were actually carried. In that connection the court said: "The penalty is not given for the refusal of the carrier to allow the owner of the goods to select the roads over which they shall be carried, but for the failure or refusal to transport and deliver as they are actually destined." For a refusal to receive and transport freight in accordance with the routing selected by the owner there are other remedies which may be invoked. For the fourth car the court held the plaintiff in the suit was entitled to recover a penalty, for the reason that the bill of lading under which that car was shipped only bound the appellant company to carry the freight as far as San Antonio, specifying Graphite as the ultimate destination. The court held that the initial carrier should have delivered this car to the I. & G. N. Railway Company, its connecting carrier, at San Antonio; but having failed to do so, and insisting on carrying the freight on to another point, Giddings, and there delivering it to another carrier, it had committed a violation of the law requiring it to deliver without delay or discrimination to its connecting carrier. In that case there was an actual failure and refusal to deliver to the connecting carrier named in the contract under which the shipment was made. Here there was an actual delivery to the proper connecting carrier, a compliance with the very terms of the statute.

We think both the evidence and the pleadings insufficient to support a judgment for the statutory penalties sued for. We are also of the opinion that the judgment awarding a peremptory writ of mandamus was error. As a basis for that writ the appellee alleges, in substance, that he expects to continue in the lumber business at Taylor, and expects and intends to purchase in the future large numbers of carloads of lumber from the aforesaid lumber company at Willard, and will want them carried over appellant's line to Trinity, and from that point over the I. & G. N. Railway by way of Palestine to Taylor; that there is no other line of railroad running through Willard, and he will be compelled to make all of his shipments over the line of the appel-

lant as the initial carrier, and that appellant refuses to allow him to have such shipments carried over the I. & G. N. Railway by way of Palestine to Taylor, and unless restrained will continue such refusal in the future, and will continue to refuse to accept such shipments from Willard to Taylor and to issue receipts therefor specifying that the same shall be carried by it to Trinity and there delivered to the I. & G. N. Railway Company for carriage by way of Palestine to Taylor, and will in future deliver shipments to the I. & G. N. Railway Company only upon condition that the latter will carry same to Houston and there deliver said lumber back to the appellant; that appellant will in future represent to the I. & G. N. Railway Company that all such shipments are destined to go by way of Houston, and will deliver waybills to said I. & G. N. Railway Company showing such routing by way of Houston, and will not, unless required by order of the court to do so, accept shipments of lumber from appellee at Willard and deliver same to said I. & G. N. Railway Company at Trinity with the routing desired by appellee, and unless restrained from so doing and required to receive and transport in the future, appellee will suffer great inconvenience, annoyance and damages, etc. In addition to a prayer for the penalties, he asks for a decree perpetually restraining appellant from in any manner attempting to prevent appellee from securing his rights under the law to have such shipments of lumber as he shall hereafter make from Willard to Taylor carried from Willard to Trinity by appellant, and thence over the I. & G. N. Railway via Palestine to Taylor, when he directs this to be done, and perpetually restraining appellant from carrying such shipments by any other route; and perpetually restraining appellant, when such shipments are delivered by it to the I. & G. N. Railway Company, from representing to that company that such shipment is routed by any other way than is directed by appellee, and also requiring appellant, when any such shipment is tendered to it at Willard with directions that the same shall be by it carried to Trinity and there delivered to said I. & G. N. Railway Company for carriage by the latter to Taylor via Palestine, to receive such shipment and "issue its receipt, or bill of lading therefor, specifying the routing given by the appellee requiring the delivery to the I. & G. N. Railway Company with the routing instructions given by appellee."

The appellee testified that he expected to continue in the lumber business at Taylor, and expected in the future to buy lumber in carload lots in the town of Willard and tender such shipments to the defendant company at Willard with directions to carry the same to Trinity and there deliver to the I. & G. N. Railway Company for transportation by that company by way of Palestine to Taylor. Allen, the general freight agent of the appellant company, testified that he had known for the past four or five years that appellee wanted all of his shipments carried to Trinity and there delivered to the I. & G. N. Railway Company and by it carried to Palestine, thence to Taylor; that he had denied him that right all the time, and expected, unless this court required them to do otherwise, to continue to deny him that right. In response to that portion of the petition the court rendered substantially the following judgment: That appellant, its officers and

agents, are required at all times in the future, when the plaintiff Thompson shall tender to it at Willard any carloads of lumber for shipment to Taylor with directions that the same shall be carried by appellant over its line to Trinity and there delivered to the I. & G. N. Railway Company for transportation by it via Palestine to Taylor, to receive such shipments so tendered and "issue to plaintiff its receipt or bill of lading therefor, specifying the routing thereof given by plaintiff;" and further ordered appellant, upon receipt of such shipment with such directions for routing, to carry same to Trinity and there deliver it to the I. & G. N. Railway Company, "together with the routing instructions relating thereto as given by the plaintiff." It was further ordered that the clerk issue "the proper writ of mandamus commanding observance by defendant, its officers, servants, agents and employes, of this judgment."

The complaint in this appeal being directed against the judgment rendered and not against the full measure of what the pleader evidently sought, we may pass by as unimportant the question of whether or not the judgment was responsive to the pleading; and by indulging that construction with which both parties appear to be satisfied, assume that the prayer of the appellee was for the very writ which was granted. It will be observed that the judgment awarding the writ commands the performance of two distinct services: (1) the giving of a receipt, or bill of lading, specifying the routing given by the appellee, and (2) the delivery of the cars to the connecting carrier, together with the routing instructions of appellee. A writ of mandamus will not lie except to compel the performance of an existing legal duty. The writ itself can not be the means of imposing that duty. Arberry v. Beavers, 6 Texas, 457; Screwmen's Benev. Ass'n v. Benson, 76 Texas, 552, 13 S. W., 379; Texas & M. Ry. Co. v. Jarvis, 80 Texas, 467, 15 S. W., 1089; 13 Ency. Plead. & Prac., 493, 497. Article 322 of the Revised Civil Statutes provides for the issuance of a written receipt, or bill of lading, by the carrier when demanded, "stating the quantity, character, order and condition of the goods." There is nothing in this provision requiring the receipt, or bill of lading, to specify the route over which the owner may wish his freight transported, and hence there was no legal duty devolving upon the agents of the appellant to do what the court here commanded them to do in making out the bill of lading. That portion of the judgment was wholly unwarranted by the statute. There appears not to be any common law duty imposed upon the carrier to issue a written bill of lading. Johnson v. Stoddard, 100 Mass., 306; 4 Elliott on Railroads, section 1415. As to the second provision of this order, we know of no statutory requirement imposing upon the carrier the duty of delivering to the connecting line the routing instructions of the owner or shipper. It is doubtless its common law duty, when delivering a through shipment to a connecting carrier, to also deliver a waybill or the routing instructions under which the shipment is to be made. 4 Elliott on Railroads, sections 1432, 1440. Louisville & N. Ry. Co. v. Central Stock Yards Co., 97 S. W., 787. This duty, however, would be discharged by the performance of service less than that which the

court required in this case, and it is not necessary for us to discuss the full extent of this common law requirement.

There are other reasons which we think are conclusive against the right of the appellee to the writ here granted. Before mandamus can be made available the party seeking it must show an existing legal right to the service demanded, a corresponding duty on the part of the person or corporation upon whom the demand is made, and a default in the performance of that duty. No such a state of facts as that is here shown. The appellee testified that he *expected* to continue in the lumber business at Taylor, and *expected* in the future to buy lumber in carload lots at Willard and tender same for shipment to the appellant company with directions to carry to Trinity and there deliver to the I. & G. N. Railway Company for transportation by that company via Palestine to Taylor. These are the facts upon which he predicates his right for the protection of which he sought the issuance of the writ. This, we think, is but the assertion of an abstract right of which he intends in the future to avail himself, and without indicating at what time in the future he expects to make these demands upon the agents of the appellant. Admitting, for the purposes of this discussion, that the appellant has indicated a purpose to continue in future to refuse to route such shipments in accordance with the wishes of the appellee, this could be considered as no more than a declaration concerning a future action or policy of the company. It was not the breach of an existing concrete duty which it was then called upon to perform. No person can be compelled by mandamus to render a particular service till he had been given at least an opportunity to perform it, nor can another claim that he has been deprived of a service till he has placed himself in a situation to make an immediate demand for its performance. The writ will not issue to protect an anticipated omssion of duty, but it must appear that there has been actual default of a clear legal duty then due at the hands of the party against whom the relief is sought. Northwestern Warehouse Co. v. Oregon R. & Nav. Co., 32 Wash., 218, 73 Pac., 389; High on Extraordinary Legal Remedies (3d ed.), section 12. How can it be said that the appellee was deprived of the service which he here seeks to have performed, until those conditions have arisen when he had a right to their performance, or how can it be said that the appellant was in default, until it was placed in the attitude where it might have actually performed the service demanded at its hands and then refused?

We do not wish to be understood as holding that upon a proper showing the performance of the duties here referred to could be enforced through mandamus. That question is not here decided. Thompson having failed to say when he intended to make his shipments, Allen's declarations as to what he would do when shipments were tendered is nothing more than a threat upon his part to refuse to do what may or may not be demanded of appellant at an indefinite time in the future. The judgment of the District Court will therefore be reversed and judgment here rendered in favor of the appellant.

*Reversed and rendered.*

Writ of error was granted in this case by the Supreme Court and

on hearing there the judgment of the Court of Civil Appeals was reversed and that of the District Court affirmed.   Thompson v. Missouri, K. & T. Ry. Co. of Texas, 103 Texas, 372.