TEXAS & N. O. R. CO. v. HANCOCK.
(No. 6955.)

(Court of Civil Appeals of Texas. Galveston.
May 28, 1915.)

CARRIERS ☞154—CARRIAGE OF FREIGHT—
BILL OF LADING—LIMITATION OF LIABIL-
ITY.

A bill of lading for an interstate shipment,
which limits the liability of the carrier for
loss to a stated value, is binding on the ship-
per, where there were two rates in force, and
he paid the lower rate based on the carrier's
limited liability, and where he signed and ac-
cepted the bill of lading.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 641–645, 667; Dec. Dig. ☞
154.]

Appeal from Liberty County Court; J. B.
Simmons, Judge.

Action by John Hancock against the Texas
& New Orleans Railroad Company. From
a judgment for plaintiff, defendant appeals.
Reformed and affirmed.

Baker, Botts, Parker & Garwood and Ste-
vens & Stevens, all of Houston, for appellant.
Mark M. Carter, of Dayton, for appellee.

McMEANS, J. John Hancock brought this
suit in the justice court of Liberty county to
recover from the Texas & New Orleans Rail-
road Company the sum of $162 as the value
of a box of household goods and a box of
tools alleged to have been lost by defendant
in course of transportation; and, a judgment
having been rendered in his favor for said
amount, the defendant appealed to the coun-
ty court, where, upon a trial before the court
without a jury, a judgment was again render-
ed in plaintiff's favor for the amount sued
for, from which judgment the defendant has
prosecuted an appeal to this court.

On June 27, 1913, the plaintiff delivered to
the Nashville, Chattanooga & St. Louis Rail-
way Company at Nashville, Tenn., a box of
household goods and a box of tools, weighing
260 pounds, to be transported to Dayton, Tex.
A bill of lading, evidencing the contract of
shipment, and which was signed by both the
plaintiff and the agent of said railway com-
pany, contained the following stipulation:

"The value of the shipment covered by this
contract is fixed by the shipper at $10 per
hundredweight, which is accepted by the carrier
as the real and true value thereof, and the rate
of freight is charged in accordance therewith,
and the carrier assumes liability only to the
extent of such valuation and no further."

It contained the further stipulation that
the shipment was received "subject to the
classifications and tariffs in effect on the
date of issue of this original bill of lading."

Plaintiff paid $3.98 as freight charges at
the time of shipment; there being nothing
said at the time concerning the real value of
the shipment. The tariffs in force and on
file and approved by the Interstate Commerce
Commission at the time of this shipment pro-
vided a rate of $1.53 per hundredweight for

household goods when they were shipped at
a valuation of $10 per 100 pounds, and for a
rate of $3.06 per 100 pounds when no valua-
tion was fixed in the contract of shipment.

The evidence, we think, was sufficient to
justify the trial court in finding that the
shipment came into the possession of defend-
ant, and that it was thereafter lost and nev-
er delivered to the plaintiff.

Defendant specially pleaded in the justice
court and in the county court the stipula-
tion limiting liability to $10 per hundred-
weight.

By its second assignment of error appellant
contends that:

"The evidence having shown that the ship-
ment of goods out of which this controversy
arose was an interstate shipment from Nash-
ville, Tenn., to Dayton, Tex., by railroad, and
that the contract of shipment stipulated that
the value of the shipment ordered by the con-
tract, as fixed by the shipper, was $10 per
hundredweight, which was accepted by the car-
rier as the real and true value thereof, and the
rate of freight was charged in accordance
therewith, and the carrier only assumed liabil-
ity to the extent of such value, and no further,
and the proof having shown that the shipment
consisted of household goods weighing 260
pounds, and the proof having further shown
that the schedule of the rate of freight under
the rules of the Interstate Commerce Commis-
sion, as arranged for said railroads operating
in that territory, covering said shipment, was
$1.53 per hundredweight for household goods,
where the same were valued at $10 per hun-
dredweight, and said rate was fixed at $3.06
per hundredweight where no valuation was stip-
ulated for said goods, and the proof having
shown that the plaintiff paid $3.98 to the Nash-
ville, Chattanooga & St. Louis Railway Com-
pany, with which he signed a written contract
for the shipment of said goods, the court erred
in rendering judgment for the plaintiff for a
greater amount than $26, the same being the
value of said goods of $10 per hundredweight,
in accordance with the stipulations and agree-
ment in said contract of shipment."

By its proposition under the above assign-
ment it urges that:

"A stipulation in the bill of lading governing
and controlling an interstate shipment, and
limiting the liability of the carrier for loss to
a fixed and stated value, is valid, where there
are alternative rates based on value."

Upon the authority of the following cases
the assignment must be sustained: Pac. Ex.
Co. v. Ross, 154 S. W. 340; Railway Co. v.
Hailey, 156 S. W. 1119; Pac. Ex. Co. v.
Krower (Sup.) 163 S. W. 9; Adams Ex. Co. v.
Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57
L. Ed. 314, 44 L. R. A. (N. S.) 257; Railway
Co. v. Carl, 227 U. S. 639, 33 Sup. Ct. 391,
57 L. Ed. 683; Railway Co. v. Harriman, 227
U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690;
Railway Co. v. O'Connor, 232 U. S. 508, 34
Sup. Ct. 380, 58 L. Ed. 703; Railway v.
Hooker, 233 U. S. 97, 34 Sup. Ct. 526, 58 L.
Ed. 868; Railway v. Thompson, 55 Tex. Civ.
App. 12, 118 S. W. 618.

In the case first cited it was held by this
court, in an opinion by Justice Reese, that a
stipulation in a shipping contract covering
goods consigned from Detroit, Mich., to Hous-

ton, Tex., limiting the liability of the carrier to the sum of $50, was valid and binding. In the opinion it is stated:

"If the shipper impliedly or expressly agrees with the carrier, or represents to the carrier, that the property offered for transportation is of a certain value, for the purpose of getting the benefit of a lower rate, the carrier being ignorant of the true value, there is no principle of law nor rule of public policy that forbids that recovery, in case of loss by negligence, be limited to such value, if in fact less than the real value."

And again, citing with approval from Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257:

"That no inquiry was made as to the actual value is not vital to the fairness of the agreement in this case. The receipt which was accepted showed that the charge made was based upon a valuation of $50, unless a greater value should be stated therein. The knowledge of the shipper that the rate was based upon that value is to be presumed from the terms of the bill of lading and of the published schedule filed with the Commission."

Citing from Hart v. Penn. R. Co., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717:

"It would be unjust and unreasonable, and would be repugnant to the soundest principles of fair dealing and of the freedom of contracting, and thus in conflict with public policy, if a shipper should be allowed to reap the benefit of the contract if there is no loss, and to repudiate it in case of loss."

In the Hailey Case, the Court of Civil Appeals at Dallas held that a limitation of liability to the amount of $100 on a trunk, in an interstate shipment, was valid and binding, following the Croninger Case, after careful consideration.

The Supreme Court of this state has also passed upon the exact point involved in the above proposition; the opinion in the Krower Case deciding that a provision limiting the liability of the express company in the event of loss or damage to $50, unless a higher value was placed by the shipper, was valid in the case of an interstate shipment.

The Croninger Case points out the sound reason for allowing a carrier, under certain conditions, to limit its liability as an insurer:

"The inherent right to receive a compensation commensurate with the risk involved, the right to protect himself from fraud and imposition by reasonable rules and regulations, and the right to agree upon a rate proportionate to the value of the property transported. It has therefore become an established rule of the common law, as declared by this court, in many cases, that such a carrier may, by a fair, open, just, and reasonable agreement, limit the amount recoverable by a shipper in case of loss or damage to an agreed value made for the purpose of obtaining the lower of two or more rates or charges proportioned to the amount of the risk. * * * That such a carrier might fix his charges somewhat in proportion to the value of the property is quite as reasonable and just as a rate measured by the character of the shipment. The principle is that the charge should bear some reasonable relation to the responsibility, and that the care to be exercised shall be in some degree measured by the bulk, weight, character, and value of the property carried. Neither is it conformable to plain principles of justice that a shipper may underestimate the value of his property for the purpose of reducing the rate, and then recover a larger value in case of loss. Nor does a limitation based upon an agreed value for the purpose of adjusting the rate conflict with any sound principle of public policy."

The facts in the Carl Case were very similar in all essential particulars to the facts of this case. An interstate shipment of household goods was made, being released to a valuation of $5 per 100 pounds. There was in existence two valid rates at the time of the shipment, and the released valuation took the lower rate. The shipper did not know of the existence of two rates, did not read the release bill of lading, and was allowed to testify that if he had known of the difference between the two rates, and the effect of accepting the lower, he would have paid the higher rate. The United States Supreme Court held:

"The valuation declared or agreed upon as evidenced by the contract of shipment upon which the published tariff rate is applied must be conclusive in an action to recover for loss or damage a greater sum. * * * To permit such a declared valuation to be overthrown by evidence aliunde the contract, for the purpose of enabling the shipper to obtain a recovery in a suit for loss or damage in excess of the maximum valuation thus fixed, would both encourage and reward undervaluations and bring about preferences and discriminations forbidden by the law. Such a result would neither be just nor conducive to sound morals or wise policies. The valuation the shipper declares determines the legal rate, where there are two rates based upon valuation. He must take notice of the rate applicable, and actual want of knowledge is no excuse. The rate, when made out and filed, is notice, and its effect is not lost, although it is not actually posted in the station."

The Hooker Case is an extreme application of the foregoing principles; it being held that, where the tariffs contained provisions limiting the liability of the carrier for the loss of baggage, the passenger was bound by such limitation, although she was not actually aware of such limitation, or in any other way than by the fact that it was contained in the carrier's tariffs.

The facts in this case are such as to bring it fairly within the principles above enunciated. There was in existence two rates under which the shipment in question could have moved; the lower rate being based on a valuation of $10 per 100 pounds, and the higher rate twice as much, being based on no valuation. The bill of lading signed and accepted by the shipper set forth clearly that the liability of the carrier was limited to $10 per 100 pounds, and the rates charged and paid were fixed on that basis. We think, therefore, that the plaintiff was entitled to a recovery of $26, and no more, and that the court erred in rendering judgment in his favor for any greater amount.

The judgment is reformed so as to permit a recovery in plaintiff's favor for $26, and, as reformed, it is affirmed.

Reformed and affirmed.