NORTH CAROLINA PUBLIC SERVICE COMPANY, CITY OF GREENS-BORO, AND CITY OF HIGH POINT v. SOUTHERN POWER COMPANY.

(Filed 10 November, 1920.)

**1. Removal of Causes—Mandamus.**

Proceedings for the issuance of the writ of mandamus in a state court is not a suit of a civil nature at law or in equity such as can be removed from the State to the Federal Court under the Federal Removal Acts.

**2. Mandamus—Corporations—Public-Service Corporations.**

*Mandamus* is the proper remedy to compel a public-service corporation to perform the duties it owes for the public benefit.

**3. Removal of Causes—Mandamus—Petition.**

Where proceedings upon petition for a *mandamus* are sought to be removed to the Federal Courts under the Federal statute, the allegations of the petition for the writ must be taken as true.

**4. Mandamus—Public-Service Corporations—Corporations—Statutes.**

A petition in proceedings under the provisions of Revisal (Pell's) secs. 822-824 to force a public-service corporation to supply electricity to the plaintiff, and other users, alike, is to compel the performance of a continuous duty, and the remedy is by *mandamus.*

**5. Same—Moot Questions.**

Where a public-service corporation owes the plaintiff, in *mandamus* proceedings, the duty to supply it with electricity, the declaration of the defendant that it will, as an accommodation only supply the plaintiff with electricity until a stated time, after which it will be discontinued, is a present denial of plaintiff's right to the service, and the proceedings may be maintained without waiting until the service has been discontinued; and a moot question is not therein presented to the court.

**6. Removal of Causes—Mandamus—Public-Service Corporations—Corporations—Statutes—Injunctions—Mandatory Injunctions.**

Where a public-service corporation denies its customer the present right to its services of a continuous nature, and declares it will only do so for a specified time as an accommodation, upon a petition to remove the cause to the Federal Courts, under the Federal statutes: *Held,* the remedy is by *mandamus,* Pell's Revisal, secs. 822-824, and, when sought, the cause is not removable upon the theory that in fact it was a proceeding for a mandatory injunction.

WALKER, J., dissenting; ALLEN, J., concurring in the dissenting opinion.

APPEAL by defendant from *Ray, J.,* at Fall Term, 1920, of GUILFORD. This is a proceeding in *mandamus* heard by his Honor, Judge Ray, in Guilford County Superior Court, 14 September, 1920. The petition for a writ of *mandamus,* duly verified, was filed by the plaintiff according to the statute. On the return day in apt time the defendant filed a petition for removal of the proceeding to the District Court of the United States for the Western District of North Carolina. The petition was in due form, accompanied by the proper bond and in all respects regular. The judge denied the motion to remove, and the defendant appealed.

*Brooks & Kelly and Roberson & Dalton for Public Service Company.*
*Charles A. Hines for city of Greensboro.*
*Dred Peacock for city of High Point.*
*Cansler & Cansler, Broadhurst & Cox, W. P. Bynum, and W. S. O'B. Robinson, Jr., for defendant.*

BROWN, J.   The motion to remove this cause to the Federal Court is based upon the contention that this proceeding, while denominated a petition for a writ of *mandamus,* is in fact a "suit of a civil nature at common law or in equity," of which the Federal Court has jurisdiction.

It seems to be well settled that a proceeding for a writ of *mandamus* in a State court is not a suit of a civil nature at law or in equity which can be removed from the State to the Federal Courts.   18 R. C. L., sec. 6.   This is the decision of the Supreme Court of the United States in *Rosenbaum v. Bauer,* 30 Law Ed., p. 744.   The question, then, to be considered is, Is this in fact a *mandamus* proceeding?

The record discloses that this is not an ordinary action returnable to term time in the manner prescribed by law for civil action.   It seems to have been brought by law in strict accordance with the provisions of the statute regulating proceedings in *mandamus.*   Pell's Revisal, secs. 822-824.

An examination of the complaint discloses that the cause of action is one for the enforcement of which *mandamus* has been held to be the proper remedy.   Briefly stated, the plaintiffs allege substantially that the defendant is under legal obligations to furnish them electric current as a public-service corporation engaged in furnishing electric current to the public.

The reciprocal rights and duties, liabilities and allegations between the North Carolina Public Service Corporation and the Southern Power Company are set out in the opinion of this Court in 179 N. C., 19, and in the opinion of the Court upon a rehearing of the same case, 179 N. C., 30.   It is not necessary to go into that matter now as the allegations of the petition, for writ of *mandamus* must be taken to be true so far as this matter for removal is concerned.   The substance of this petition is that the defendant is now furnishing plaintiff with electric current, but has notified plaintiffs that it will cease to do so on and after 1 January, 1921.   Plaintiffs aver that it is the legal duty of the defendant to continue to furnish the said current after 1 January, and upon such reasonable terms and rates as may be fixed by the Corporation Commission in case the parties fail to agree among themselves.   Plaintiffs aver that this duty which the defendant has assumed, a public-service corporation under the laws of North Carolina, is a continuous duty, and that the defendant may be compelled to perform it by writ of *mandamus*.   The prayer of the petition is as follows:

"Wherefore, plaintiffs pray for a writ of *mandamus* against the defendant power company to compel it to continue to furnish electric current and power to the public-service company through its substations at Greensboro and High Point, to operate the street car lines in both said cities, and for the use and benefit of the municipalities and the

çitizens thereof for light and power, as is now being furnished, and for the cost of this proceeding, but for no other relief."

It is well settled under the decisions of this Court that *mandamus* is a proper remedy to compel a public-service corporation to perform its duties for the benefit of the public. In *Tel. Co. v. Tel. Co.*, 159 N. C., 17, the difference between a *mandamus* and a mandatory injunction is clearly stated as follows:

"In regard to the form of remedy available, where, as in this State, the same côurt is vested with both legal and equitable jurisdiction, there is very little difference in its practical results between proceedings in *mandamus* and by mandatory injunction, the former being permissible when the action is to enforce performance of duties existent for the benefit of the public, and the latter being confined usually to causes of an equitable nature and in the enforcement of rights which solely concern individuals. High on Injunctions (4 ed.), sec. 2. Owing to the public interests involved, in controversies of this character, it is generally held that *mandamus* may be properly resorted to, *Godwin v. Tel. Co., supra; Commercial Union v. Tel. Co., supra; Mahan v. Tel. Co.*, 132 Md., 242; *Yancy v. Tel. Co.*, 81 Ark., 486."

In *Walls v. Strickland*, 174 N. C., 298, it is said by *Justice Allen:* "It was then held that the telephone companies serving the public must discharge their duties impartially and without discrimination, and that the right of *mandamus* issued by the courts was the proper remedy to enforce the performance of the duty."

It is contended, however, by the defendant that a writ of *mandamus* can only issue against a public-service corporation to secure the performance of a duty which it has failed to perform and will not lie to compel the performance of a continuous duty. It is insisted that there has been no actual default, and that there will not be at best until the first of January, 1921, and that the question involved is at best a moot question.

We admit that the general rule is that *mandamus* will not ordinarily lie in anticipation of a supposed omission of duty, and that in this case the omission of duty will not occur until 1 January.

Referring to this precise question, after stating the general rule, it is said in 18 R. C. L., p. 132, sec. 36, that, "This, however, is a general rule merely, and while *mandamus* will not ordinarily be available in advance of the time when the duty is to be performed, it is also recognized that extreme cases may well arise demanding the use of *mandamus* to control the performance of prospective duties."

The defendant contends that while it has notified the city and the plaintiff that it owed it no duty to continue to furnish light and power, and would discontinue same on 1 January next, that still for the pur-

poses of this action it might change its mind, and that therefore the Court is dealing with a moot question. This same defense was recently interposed by a light company in the State of Wisconsin. *Milwaukee v. Electric Ry.*, 144 Wis., 386. This was also a *mandamus* proceeding to compel the street railway company to sprinkle the streets between 1 April and 1 November, and the action was brought before the sprinkling season began. The Court states in this case that the defendant, among other things, expressly contended "that *mandamus* will not lie to enforce the performance of a continuous act, and that it will not lie because the case presents a moot question only." After disposing of other contentions, the Court continuing, says:

"Neither do we see any good reason for saying that relief should not be afforded by *mandamus* because the duty to sprinkle is a continuous one. If the legal duty on the part of the appellant is clear, the relator should not be denied an appropriate remedy because the right sought to be enforced is not of a temporary nature. There can be no more objection to a court of law granting permanent relief by *mandamus* in an appropriate action than there is to a court of equity granting relief in a proper case by a mandatory injunction. That *mandamus* will lie to enforce the performance of a continuous legal duty has been decided at least by inference in this Court. *S. v. Janesville St. R. Co.*, 87 Wis., 72. Such is the general current of authority elsewhere." (Citing numerous authorities.) "The contention that the case presents only a moot question we do not take seriously."

See, also, *Morrison v. Wrightson*, N. J., 22 L. R. A., p. 561. To the same effect is the decision of the Supreme Court of Colorado, 110 Pac., 197, in the case of *Berkey v. Commissioners*, citing *City of Austin v. Cahill*, 99 Tex., 172. This question was considered by the Supreme Court of Massachusetts in *Attorney-General v. Boston*, 123 Mass., 466. In that case the Court says: "Applications for writs of *mandamus* being addressed to the sound judicial discretion of the court, the circumstances of each case must be considered in determining whether a writ of *mandamus* shall be granted; and the court will not grant the writ unless satisfied that it is necessary to do so in order to secure the execution of the laws. But when the person or corporation against whom the writ is demanded has clearly manifested a determination to disobey the laws, the court is not obliged to wait until the evil is done before issuing the writ."

The case of *Missouri P. & R. Co. v. Larabie Flour Mill Co.*, 53 U. S. Law Ed., p. 359, involved a *mandamus* proceeding before the Supreme Court of Kansas, compelling the railroad company to transfer cars from another railroad company without discriminating in favor of other

concerns who were being similarly served.  *Mr. Justice Brewer,* deliver-
ing the opinion of the Court, says:

"While no one can be compelled to engage in the business of a com-
mon carrier, yet when he does so certain duties are imposed which can
be enforced by *mandamus* or other suitable remedy.  The Missouri
Pacific engaged in the business of transferring cars from the Sante Fe
track to industries located at Stafford, and continued to do so for all
parties except the mill company.  So long as it engaged in such transfer
it was bound to treat all industries at Stafford alike, and could not refuse
to do for one that which it was doing for others.  No legislative enact-
ment, no special mandate from any commission or advisory board was
necessary, for the duty arose from the fact that it was a common carrier.
This was at the foundation of the law of common carriers.  Whenever
one engages in that business the obligation of equal services to all arises,
and that obligation, irrespective of legislative action or special mandate,
can be enforced by the courts.  Indeed, all of these questions are dis-
posed of by one established proposition, and that is, that a party engag-
ing in the 'business of a common carrier is bound to treat all shippers
alike, and can be compelled to do so by *mandamus* or other proper writ."

From a careful examination of the authorities, and of this Court's
rulings in the past, we are satisfied that the defendant power company's
contention that this proceeding should be construed to be a mandatory
injunction and not a *mandamus* is untenable.  The uniform procedure
and practice of our courts has recognized the writ of *mandamus* as the
proper and appropriate remedy in actions of this character, and it
makes no difference that the duty which defendants owe the plaintiff
is being denied today or unmistakably proposed to be denied tomorrow.
Aside from the adjudicated cases and the procedure of our courts the
defendant, by its letter of 8 January, 1920, to·the plaintiff public-service
company precludes it from controverting the fact that it has already
denied and withdrawn any and all services to the plaintiffs as a public-
service corporation.  It clearly asserts that the current which it is now
furnishing may be cut off at any time, and that it is only furnished as a
matter of .accommodation, and not in the performance of a public duty.

Thus it clearly appears that the defendant power company, while
designating 1 January next as the time at which it will sever all con-
nections and service to the plaintiffs, it has in fact asserted its present
withdrawal from all obligations and duties owned as a public-service
company to the plaintiff.

The current which is now being furnished is not furnished as a matter
of right, but as a matter of accommodation.  This we hold to be not
only a denial but a present withdrawal of its public-service obligations
to the plaintiff, and that this *mandamus* proceeding is properly instituted
to obtain and enforce plaintiff's rights.

Affirmed.

WALKER, J., dissenting: This is an appeal by the defendant from the order of his Honor, Judge Ray, refusing to remove this case to the United States District Court for the Western District of North Carolina. His Honor found, as stated in the order, that the petition and bond for removal were in due form and in every respect legally sufficient, and that due notice of the petition and bond had been given the plaintiffs. The sole ground upon which his Honor refused to grant the petition is as stated in the order, "That the complaint filed herein by the plaintiffs states a case in which a writ of *mandamus* may properly issue and the United States District Court has therefore no original jurisdiction of such a case, and could not entertain jurisdiction of the action as set forth in the complaint by its removal from the State court, and that, therefore, this court has jurisdiction."

The action of the plaintiffs against the defendant is based upon two letters, each dated 8 January, 1920, from the defendant to the plaintiff, North Carolina Public Service Company, which appear on pages 24 and 27 of the record, and in which the defendant notified the plaintiff, North Carolina Public Service Company, that after 1 January, 1921, it would discontinue furnishing electricity to said North Carolina Public Service Company, for resale at Greensboro and High Point, offering in the meantime to let the public-service company have electricity at cost, the twelve months notice being given in order to afford the public-service company ample opportunity to equip itself in order to provide its own supply of electricity.

The complaint expressly alleges that the defendant is now discharging its public duty, as the same is alleged by the plaintiffs to exist, by selling current to the public-service company at wholesale for the benefit of said municipalities and their citizens.

The object and a purpose of the action is, as stated in the complaint, to prevent the defendant from cutting off and discontinuing service to the public-service company at Greensboro and High Point, after 1 January, 1921; to prevent the defendant from leaving both cities in darkness, and to prevent the stopping of the street car service, and to protect the valuable property rights which the two cities hold under existing contracts, which they now have with their coplaintiff for lighting their streets and other places, and in every way possible to protect the citizens against loss and damages from such an action.

The grounds upon which the relief sought is claimed is as stated in the complaint, that if the defendant power company is permitted to cut off its current and discontinue furnishing the same to the public-service company for the operation of its street cars and for lighting the streets of Greensboro and High Point untold and irreparable damage will result to the plaintiffs and the inhabitants of said cities, and paraly-

sis of business will follow. The relief prayed is that defendant be compelled to continue furnishing electric current and power to the public-service company through its substations at Greensboro and High Point for the purpose of operating their street car lines in both cities, and for the use and benefit of the municipalities and the citizens thereof, for light and power, as is now being furnished.

The plaintiffs contend that this is a proceeding for a writ of *mandamus,* and that, the United States District Court having no original jurisdiction of a proceedings for a writ of *mandamus,* the case cannot be removed to that Court; and, as will appear from his Honor's order, it was upon this ground alone that his Honor refused to remove the case to the United States District Court.

It is conceded by the defendant that the United States District Court has no original jurisdiction of a proceeding for a writ of *mandamus,* and if this be such a proceeding, and nothing else, the order refusing to remove the case was properly made, and this appeal must fail.

*Bath County v. Amy,* 13 Wall., 244; 20 L. Ed., 539, is probably the leading case holding that the Federal Courts have no original jurisdiction of a proceeding for a writ of *mandamus.* The reason of the ruling as there stated by *Mr. Justice Strong* was, that *mandamus* does not fairly come within the words of the Judiciary Act of 1789 (1 Stat. at Large, 73), conferring jurisdiction upon the Federal Court, which are, "All suits of a civil nature at common law, or in equity," etc., because it was not at common law a private remedy to enforce simple common-law rights between individuals, but was a high prerogative writ issuing in the King's name only from the Court of King's Bench, requiring the performance of some act or duty which it had previously determined to be consonant with right and justice. It is admitted that the power to issue such writs was given by sec. 14, with the restriction that they should be necessary to the exercise of the jurisdiction already given. If the Federal Courts have jurisdiction to issue the writ of *mandamus,* and we treat this case as an application for the same, it would be removable without a doubt, and this would necessarily follow from the plaintiff's own contention, but they have no such jurisdiction (*Rosenbaum v. Bauer,* 120 U. S., 450), and, if they had, the writ could not issue in a case like this one, as we will see hereafter, when there is no present or existing failure by defendant to perform its duty to the public, or to the plaintiffs.

The action of the plaintiffs is not a proceeding for a writ of *mandamus* but, on the contrary, is a suit for a mandatory injunction to compel the defendant to continue to furnish electricity to the plaintiffs, for the purpose stated in the complaint, and being such a suit, the United States District Court clearly has jurisdiction of it, and his Honor erred in refusing to grant the petition to remove.

Although the plaintiffs, by the use of the word *"mandamus,"* have sought to denominate this suit a proceeding for a writ of *mandamus,* yet the court will disregard the mere name by which the plaintiffs have undertaken to call the proceeding and look at its real nature, as disclosed by the facts alleged, the object sought to be attained, and the relief actually prayed, and when this is done, it clearly appears, upon the face of the complaint, that it is not a proceeding for a writ of *mandamus,* but a suit for a mandatory injunction. *Mandamus* is a remedial writ at law, and, in order for it to lie, there must have been an actual default on the part of the defendant, and it will never be granted in anticipation of an omission of duty; wherein lies the distinction between it and an injunction, which is a preventive remedy in equity, usually invoked to prevent threatened injury or omission of duty. So far from the complaint in this case showing that the defendant has been guilty of any actual default or present omission of duty, it is expressly alleged (bottom of page 16 and top of page 17 of the record) that the defendant is now discharging its public duty (the duty alleged by the plaintiffs to be due them, and the future neglect of which they seek to prevent) by selling current to the public-service company at wholesale for the use and benefit of the said municipalities and their citizens, and to their satisfaction; and the purpose and object of the action is, as stated in paragraphs 31 and 33 of the complaint, to prevent the defendant from discontinuing the furnishing of electricity to the plaintiffs, which it is alleged would result in untold and irreparable damage. The prayer of the complaint is to compel the defendant to continue to furnish such electricity as is now being furnished. The defendant does not contend that the action of the plaintiffs should be dismissed simply because they have used the wrong name to describe their remedy, nor does the position of the defendant involve any such result; but the defendant does contend that the court must look at the facts alleged, the object sought to be attained, and the actual relief prayed in order to ascertain the real character of the action, and having ascertained its real character, must treat it accordingly. The defendant contends that the jurisdiction of courts of equity to enforce the performance of their public duties by public-service corporations, through the medium of a mandatory injunction, is well recognized, and that where there has been no actual default in the performance of such public duties, but only a threatened omission of the duty, mandatory injunction is the only available remedy, and that the Federal Courts have repeatedly exercised original jurisdiction of such actions as the one here presented. If the real nature of the action is equitable, *i. e.,* one for a mandatory injunction instead of a proceeding for a writ of *mandamus,* as the distinction is recognized at common law, in the light of which distinction the terms

of the acts of Congress conferring jurisdiction on the Federal Courts must be construed, then even conceding that the State Court might, under the code of practice prevailing in the State, award the plaintiff the relief sought in this action in a proceeding which the State Court would permit to be brought and described as a proceeding for a writ of *mandamus,* the Federal Court cannot, upon this ground, or for this reason, be deprived of its jurisdiction of the action, if jurisdiction in fact exists under the acts of Congress, because the real issue presented upon this appeal is not what relief the State Court will grant in a proceeding brought or permitted, under the State practice, and described as a *mandamus,* but whether the Federal Court has jurisdiction of the action presented by the complaint of the plaintiffs; since, if the Federal Court in fact has jurisdiction of the action, the State is powerless, either through its Courts or by legislation, in any way or to any extent to limit, restrict, or abridge the jurisdiction of the Federal Courts, as conferred by the acts of Congress. It being admitted that this case has been duly docketed in the Federal Court, and is now pending there, comity between the two Courts suggests that this Court reverse the order of his Honor, Judge Ray, and leave the question here presented to be determined by the Federal Court upon a motion to remand, especially since the only question presented is the Federal one, as to whether the Federal Court has jurisdiction of this action, which is a question primarily and peculiarly proper to be determined by the Federal Court rather than by this Court. But we do not mean to intimate that the State Court should relinquish its possession of the cause unless it determines first that a removal cause is presented in the petition, and the suggestion just made is based upon our clear conviction that such a case is stated by the defendant. But treating this as an application for a *mandamus,* for the sake of the argument, we will pursue the discussion under that head a little further. *Mandamus* will not lie unless there has been an actual default on the part of the defendant, nor will it ever be granted in anticipation of an omission of duty. This proposition of law is based upon a fundamental distinction between law and equity jurisprudence, and is uniformly recognized and applied. As this principle is so important in these cases to be clearly understood and established as a determinative one, we may be indulged to quote from the highest authorities at some length. In High's Extraordinary Legal Remedies, sec. 6: "A comparison of the writ of *mandamus,* as now used both in England and America, with the writ of injunction, discloses certain striking points of resemblance as well as of divergence in the two writs. Both are extraordinary remedies, the one the principal extraordinary remedy of courts of equity, the other of courts of law, and both are granted only in extraordinary cases, where otherwise these

courts would be powerless to administer relief. Both, too, are dependent to a certain extent upon the exercise of a wise judicial discretion, and not grantable as of absolute right in all cases. It is only when we come to consider the object and purpose of the two writs that the most striking points of divergence are presented. An injunction is essentially a preventive remedy, *mandamus* a remedial one. The former is usually employed to prevent future injury, the latter to redress past grievances. The functions of an injunction are to restrain motion and to enforce inaction, those of a *mandamus* to set in motion and compel action. In this sense an injunction may be regarded as a conservative remedy, *mandamus* as an active one. The former preserves matters *in status quo,* while the very object of the latter is to change the status of affairs and to substitute action for inactivity. The one is therefore a positive or remedial process, the other a negative or preventive one."

In Tapping on Mandamus, marginal page 10, it is said: "A *mandamus* will not be granted in anticipation of a defect of duty or error of conduct."

In Spelling on Injunctions and Other Extraordinary Remedies, sec. 1385: *"Mandamus* cannot be given effect prospectively. A relator is not entitled to the writ unless he can show a legal duty then due at the hands of the respondent; and until the time arrives when the duty should be performed, no threats or predetermination not to perform it can take the place of such default. The law does not contemplate such a degree of diligence as the performance of a duty not yet due. The general rule is that the writ will not be granted in anticipation of a supposed omission of duty, however strong the presumption may be that the person sought to be coerced by the writ will refuse performance at the proper time. An important reason for refusing the writ in such cases is that, until the duty is due, no practical question can be presented to the court, but simply a supposed case." In *Ex parte Cutting,* 94 U. S., p. 14, *Chief Justice Waite* said: "The office of a *mandamus* is to compel the performance of a plain and positive duty. It is issued upon the application of one who has a clear right to demand such performance, and who has no other adequate remedy. It is never granted in anticipation of an omission of duty, but only after actual default."

In *Board of Liquidation v. McComb,* 92 U. S., 531, *Mr. Justice Bradley* very clearly stated the distinction between a *mandamus* and an injunction, as follows: "It has been well settled that when an official duty, requiring no exercise of discretion, is to be performed, and performance is refused, any person who will sustain personal injury by such refusal may have a *mandamus* to compel its performance; and when such a duty is threatened to be violated by some positive official act, any person who will sustain personal injury thereby for which

adequate compensation cannot be had at law, may have an injunction to prevent it. In such cases the writs of *mandamus* and injunction are somewhat correlative to each other."

In the case cited the action was brought in the Circuit Court of the United States for a perpetual injunction to restrain the Board of Liquidation of the State of Louisiana from using the bonds, known as consolidated bonds of the State, for the liquidation of certain debts claimed to be due from the State to the Louisiana Levee Company, or from using any other State bonds in payment of said pretended debt, and the jurisdiction of the Circuit Court over the action was sustained. In *Lyon v. Comrs.,* 120 N. C., 243, it is said: *"Mandamus* is a proceeding to compel a defendant to perform a duty which is owing to the plaintiff, and can be maintained only on the ground that the relator has a *present* clear, legal right to the thing claimed, and that it is a duty of the defendants to render it to him. *Brown v. Turner,* 70 N. C., 93."

In *Scott v. Singleton,* 171 Ky., 117; 188 S. W., 302, the Court held: "Mandatory injunction is the only available and proper remedy for requiring the county clerk to prepare for a municipal primary election, the duty not devolving on him under Ky. St., sec. 3235-c, subsec. 6, till ten days before the election, *mandamus* not being grantable in anticipation of an omission of duty, *but only after actual default."* The Court then advances conclusive reasons why the contention of the defendant there, and the plaintiff here, should not prevail.

In *Board of Education v. Hunter, Treasurer,* 87 N. W., p. 485, the proceeding was a *mandamus* to compel the city treasurer to set aside school taxes immediately after paying the city tax and before setting aside any sums for other purposes. In denying the relief prayed, because there had been no actual default on the part of defendant, the Supreme Court of Wisconsin, through *Mr. Justice Winslow,* said: "The general principle is frequently stated that *mandamus* will not lie to compel performance of an act by a public officer unless the act be due, that is actually due from the officer at the time of the application. Until the time arrives when the duty should be performed, there is no default of duty; and mere threats not to perform the duty will not take the place of default. The writ is not granted to take effect prospectively. Spell. Extr. Remedies, sec. 1385; High, Extra. Rem. (3 ed.), secs. 12, 36; Tapp., Mand., p. 10; Wood Mand. (2 ed.), p. 51; 14 Am. and Eng. Law (1 ed.), p. 105."

This so clearly and emphatically conforms to what seems to be the universal rule, as we have stated it, that it would add nothing to the strength of our position should we continue to quote from many other decisions of Federal and State Courts. We will therefore content ourselves with merely citing some of the authorities upon this feature of the

case.  *R. R. v. Thompson,* 55 Texas Civil Appeals; 118 S. W., 618; *Northwestern Warehouse Co. v. O. R. & Nav. Co.,* 32 Wash., 218; High on Extra. Legal Remedies (3 ed.), sec. 12, where many cases are collected.  They are all to the effect that no person can be compelled by *mandamus* to render a particular service till he had been given at least an opportunity to perform it, nor can another claim that he has been deprived of a service till he has placed himself in a situation to make an immediate demand for its performance.  The writ will not issue to protect an anticipated omission of .duty, but it must appear that there has been actual default of a clear legal duty then due at the hands of the party against whom the relief is sought.  The complaint in the case shows that there has been no actual default on the part of the defendant, but there is only the statement that the defendant will, after 1 January, 1921, discontinue furnishing electricity to the plaintiffs, and the plaintiffs' action is, therefore, in fact and effect, a suit for mandatory injunction to compel defendant to continue to furnish them electricity after 1 January, 1921, and not a proceeding for a writ of *mandamus.*  We have already referred to the allegations of the plaintiffs' complaint, which shows the above stated proposition to be true.  After setting forth the prior negotiations and dealings between the parties, it is alleged in paragraph 24 of the complaint (bottom of page 16 and top of page 17 of the record) that, "It (the defendant) is now discharging this public duty (the public duty claimed by the plaintiffs to be owing to them by the defendant, and for the continued performance of which this action is brought) by selling current to the public-service company at wholesale, for the use and benefit of said municipalities and their citizens to their satisfaction."  The prayer for relief is "to compel it (the defendant) to continue to furnish electric current and power to the public-service company, through its substations at Greensboro and High Point, to operate the street car lines in both said cities, and for the use and benefit of the municipalities and the citizens thereof, for light and power as is now being furnished."  Thus it clearly appears from the complaint that there has been no actual default on the part of the defendant, and the entire action of the plaintiffs is predicated solely upon the avowed purpose of the defendant to discontinue furnishing electricity to the plaintiffs as it is now furnishing same, after 1 January, 1921, and the object of the action is to prevent the defendant from putting its purpose to discontinue service into effect.  The complaint, therefore, clearly shows that the action of the plaintiffs is essentially one for an injunction. The object of the action is stated in paragraph 31 as follows:  "To prevent the defendant from putting both cities in darkness,. and to prevent the stopping of the street car service and to protect the valuable property rights which the two cities hold under existing contracts, which

they have now with their coplaintiff, for lighting their streets and other service, and in every way possible to protect the citizens against loss and damage by such an act." In paragraph 33 of the complaint the grounds upon which an injunction is asked are stated as follows: "That if the defendant power company is permitted to cut off its current and discontinue furnishing same to the public-service company to operate its street cars and to light the streets of Greensboro and High Point, and to furnish the citizens thereof with light and power, untold and irreparable damage will result to the plaintiffs and the citizens of said cities, and stagnation of business will follow." The plaintiffs forgot that "untold and irreparable damage" is the favorite reason in equity for granting injunctive relief. The calling of the remedy they seek a *"mandamus"* does not make it so. It is what in law it really is that determines its nature, nor does the expression finally used by plaintiffs, when they pray for a *mandamus,* namely, "but for no other relief," change the result. It is not the form but the substance of the relief that controls. Under our procedure the courts grant that relief to which the plaintiff entitles himself by the allegations of his complaint, and not by the form of his prayer. If he mistakes his remedy or relief, the courts will give him appropriate relief notwithstanding. Many of our cases support this proposition, but *Knight v. Houghtalling,* 85 N. C., 17, especially at 34, leads in the long array of cases, where *Chief Justice Ruffin,* who delivered the opinion for the Court, said: "We have not failed to observe that the answer of the defendant contains but a single prayer for relief, and that for a rescission of their contract. But we understand that, under the Code system, the demand for relief is made wholly immaterial, and that it is the case made by the pleadings and the facts proved, and not the prayer of the party, which determines the measure of relief to be administered, the only restriction being that the relief given must not be inconsistent with the pleadings and proof. In other words, the Code has adopted the old equity practice when granting relief under a general prayer, except that now no general prayer need be expressed in the pleadings, but is always implied." The case of *Whitfield v. Oates,* 59 N. C., 136, furnishes an instance where a plaintiff, though he failed as to his principal equity, was allowed to avail himself of a secondary equity not inconsistent with the allegations in his bill and the proofs in the cause. Numerous citations of *Knight v. Houghtalling, supra,* will be found in the annotated edition of 85 N. C., 17, and among them are the following: *Voorhees v. Porter,* 134 N. C., 591; *Staton v. Webb,* 137 N. C., 42; *Bradburn v. Roberts,* 148 N. C., 218; *Councill v. Bailey,* 154 N. C., 57, and 60; *Silk Co. v. Spinning Co., ib.,* 422, and more recently, *Bryan v. Canady,* 169 N. C., 579. In *Bradburn v. Roberts, supra,* the Court said: "Under our Code system

it is not required that a party should be confined to the specific relief which he demands. *Knight v. Houghtalling,* 85 N. C., 17. In *Voorhees v. Porter,* 134 N. C., at p. 595, this Court said: 'We hear the case upon the facts alleged in the pleadings, and if the plaintiffs have set forth in their complaint such facts as entitle them to relief they will not be restricted to the relief demanded in their prayer for judgment, but may have any additional and different relief which is not inconsistent with the facts so alleged in their complaint, it being the pleadings and the facts proved which determine the measure of relief to be administered.' And at page 597 it is said: 'We find it to be well settled by the decisions of this Court that if the plaintiff in his complaint states facts sufficient to entitle him to any relief, this Court will grant it, though there may be no formal prayer corresponding with the allegations, and even though relief of another kind may be demanded.' *Knight v. Houghtalling, supra; Gillam v. Ins. Co.,* 121 N. C., 369." In the case last cited, *Clark, J.,* for the Court, says: "Under the Code, the demand for relief is immaterial, and the Court will give any judgment justified by the pleadings and proof," citing numerous cases. Clark's Code (3 ed.), p. 584, and notes to section 425. But this substantially is but the equity rule, as shown in *Bradburn v. Roberts, supra; Councill v. Bailey, supra,* and *Kansas v. Colorado,* 85 U. S., 145; *Jones v. Van Doren,* 130 U. S., 692; Daniels Ch. Pr. (4 Am. Ed.), 380; *English v. Foxall,* 3 Peters (U. S.), 595; *Texas v. White,* 10 Wall., 68; *Stevens v. Gladding,* 58 U. S. (17 How.), at p. 455. It has been suggested at this stage of the argument that defendant does not demur or move to dismiss plaintiffs' action because it desires the case to be heard upon its merits, as soon as possible, as it affects not only private but public interests, and it is further asserted that, by proper application in the United States District Court, where the record of this case has been duly certified, filed, and docketed, the defendant can, by proper application to the Federal Court, have an injunction to protect its rights until a final adjudication of the cause, but it seems it has resorted to no such proceeding, and we do not consider it, as it is not before us.

We now proceed, in the full development of the argument, to consider as next in order the proposition that the courts of equity have jurisdiction to enforce performance of the duties of public-service corporations, by means of mandatory injunctions, and where there has been no actual default, but only a threatened omission of duty, mandatory injunction is the only available remedy and, under this head of equity jurisdiction, the Federal Courts of equity have repeatedly exercised jurisdiction of suits of the character here presented. The Federal Judicial Code of 1911, sec. 24, confers jurisdiction upon the District Courts, as follows: "The District Courts shall have original jurisdiction . . . of all

suits of a civil nature at common law or in equity . . . where the matter in controversy exceeds, exclusive of interest and cost, the sum or value of three thousand dollars ($3,000), and . . . between citizens of different States." It has been repeatedly held that the statute confers original jurisdiction upon the Federal Courts of suits, identical in character with the one here presented, and this being true, it clearly follows that his Honor was in error in refusing to order the removal of this case to the Federal Court. The sole ground upon which his Honor refused to remove the case is as stated in the order, "that the United States District Court, therefore, has no original jurisdiction of such a case, and could not entertain jurisdiction of the action as set forth in the complaint." In other words, his Honor held that it would be futile to remove the case to the Federal Court, because if removed there would be nothing for the Federal Court to do but to remand it to the State Court for want of jurisdiction. We repeat, therefore, that the crux of the case is whether under the acts of Congress the Federal Court has original jurisdiction of the action presented by the complaint of the plaintiffs; and we submit that the following authorities show beyond a shadow of doubt that the Federal Court has such jurisdiction.

In *Ex parte Lennon,* 166 U. S., 549; 41 L. Ed., 1110, suit was brought by the Toledo, etc., Railway Company against the Ann Arbor Central Railroad Company, and other companies, to enjoin the defendants from discontinuing the interchange of traffic and freight with the plaintiff railway company, as the same had theretofore been interchanged, the defendant companies having threatened to discontinue such interchanging. Upon the question of jurisdiction, the case is on all fours with the case presented upon this appeal. The case cited was to prevent the discontinuance of the interchange of freight and traffic. The case at bar is to prevent the discontinuance of the interchange of electricity.

The question of the original jurisdiction of the Circuit Court over the case was presented to the Supreme Court of the United States upon a petition to relieve Lennon from custody for contempt in disobeying the injunction which the Circuit Court had granted. In sustaining the original jurisdiction of the Circuit Court, the Supreme Court of the United States said: "There could be no doubt of the power of the Court to grant this injunction, which bore solely upon the relations of the railway companies to each other. It was alleged in the bill to have been a part of the regular business of the defendant roads to interchange traffic with the Ann Arbor road, and the injunction was sought to prevent an arbitrary discontinuance of this custom. Perhaps, to a certain extent, the injunction may be termed mandatory, although its object was to continue the existing state of things, and to prevent an arbitrary breaking off of the current business connections between the roads. But

it was clearly not beyond the power of a court of equity, which is not always limited to the restraint of a contemplated or threatened action, but may even require affirmative action, where the circumstances of a case demand it, citing *Robinson v. Bryon,* 1 Bro. C. C., 587; *Harvey v. Smith,* 1 Kay & J., 389; *Beadel v. Perry,* L. R., 3 Eq., 465; *Witecar v. Mechenor,* 37 N. J. Eq., 60; *Brooms v. New York & N. J. Teleph. Co.,* 42 N. J. Eq., 141."

*Hines v. Heneghan* (C. C. A., 4th Circuit), recently decided by the Circuit Court of Appeals of this circuit, and reported in the advance sheets of the Federal Reporter for 9 September, 1920, which has become available since the decision of Judge Ray, is also upon the question of jurisdiction, closely analogous to the case at bar. The nature of the case will appear from the following quotation from *Judge Pritchard's* opinion: "This suit was instituted in the District Court of the United States for the Northern District of West Virginia. It arose upon a bill in equity by Henegan & Hanlon, appellees, to restrain the threatened action of Walker D. Hines, Director General of Railroads, and the Baltimore & Ohio Railroad Company, to discontinue service to and from the siding at the plant of Henegan & Hanlon at Cornwallis, West Virginia." The Court held that it clearly had jurisdiction of the suit, and the injunction sought was granted, subject to certain limitations.

In *Coe v. L. & N. Railroad Co.,* 3 Federal Reporter, p. 775, the defendant railroad company had notified the complainant that after a date named it would discontinue the delivery of livestock at the complainant's stockyard in Nashville, and the suit was a bill in equity by complainant to restrain this threatened action on the part of the defendant. The jurisdiction of the Court to grant the injunction was sustained and the opinion of the Court is in part as follows: But defendant, protesting that the proposed discrimination in favor of the Union Stockyard Company, if executed, constitutes no wrong of which complainants ought justly to complain, contends: First, that complainants, even supposing the law to be otherwise, have an adequate remedy at law, and therefore cannot have any relief from a court of chancery; and second, that if a chancery court may entertain jurisdiction, no relief in the nature of a mandatory order to compel defendant to continue accommodations to the complainants ought to be made until the final hearing. If such is the law it must be so administered. But we do not concur in this interpretation of the adjudications. Those cited in argument are not, we think, applicable to the facts of this case. It was there said, in the opinion of the Court, that there was no adequate remedy at law, and to avoid a multiplicity of suits for damage, which might be ruinous to the plaintiff, the Federal Court, on its equity side, would proceed by mandatory injunction to award the proper relief. It also fully

answered the contention that the injunction, in its mandatory form, should not issue until the final hearing by saying: "One other point remains to be noticed. Ought a mandatory order to issue upon this preliminary application? Certainly not, unless the urgency of the case demand it, and the right of the parties are free from reasonable doubt. The duty which the complainants seek by this suit to enforce is one imposed and defined by law—a duty of which the Court has judicial knowledge. The injunction compelling its performance, pending the controversy, can do defendant no harm; whereas a suspension of accommodations would work inevitable and irreparable mischief to complainants. The injunction prayed for will, therefore, be issued." We think the *Coe case* is closely analogous to the one at bar, and seems to be decisive of it.

The *"Express cases,"* 117 U. S., p. 1; 29 L. Ed., 791, which is probably the most famous litigation of the character presented by this action, arose upon a bill in equity by the express companies against the railroad companies, filed in the Federal Court, to restrain the railroad companies from discontinuing service to the express companies. *Chief Justice Waite's* opinion opens with a description of the case, as follows: "These suits present substantially the same questions, and may be considered together. They were each brought by an express company against .a railway company to restrain the railway company from interfering with or disturbing in any manner the facilities theretofore afforded the express company for doing its business on the railway of the railway company." The Court disapproved the bills on their merits (or rather their demerits), but never for a moment questioned the jurisdiction of the Court to grant the relief prayed, if it could be founded on any recognized equity. It ruled that without a statute, or a contract to that effect, the express companies could not demand of the railroad companies the facilities for carrying their packages on the latter's cars. Neither the *Chief Justice* nor the dissenting *Justices (Miller* and *Field)* ever suggested a want of jurisdiction, and the *Chief Justice,* at page 27, virtually conceded the same.

If, as contended, the real nature of this action is equitable, *i. e.,* one for mandatory injunction instead of a proceeding for a writ of *mandamus,* as the distinction was recognized at common law, in the light of which the terms of the acts of Congress conferring jurisdiction upon the Federal Courts must be construed, then even conceding that the State Court might, under the State practice, disregard the distinction between a *mandamus* and a mandatory injunction and award the plaintiffs the relief sought in an action in the form of, or described as *mandamus,* the Federal Court cannot, for this reason or upon this ground, be deprived of jurisdiction of this action, if in fact jurisdiction exists under the acts

of Congress, because the real issue presented upon this appeal is not what relief the State Court will award in an action in the form of a *mandamus,* since this is merely a matter of State practice over which the State law is supreme; but whether the Federal Court has jurisdiction of the action, as presented in the complaint of the plaintiffs, which is a Federal question, over which the Federal law is supreme, with the result that the State, either through its Legislature or its courts, is powerless to control the determination of such question, or to limit, restrict, or abridge such jurisdiction. We frankly concede, at least for the sake or argument, that in States where the code practice prevails little attention is given to the distinction between proceedings in *mandamus* and mandatory injunction, decisions may be cited in which State Courts are found granting relief in proceedings in the form of *mandamus* in advance of actual default by the defendant, contrary to the distinction and resulting rule, as recognized at common law. It must be borne in mind that our State Courts are not hampered or restricted, as are the Federal Courts, by the Federal Judiciary Act. Thus, in *Tel. Co. v. Tel. Co.,* 159 N. C., 17, *Justice Hoke* says: "As to the form of remedy available where, as in this State, the same court is vested with both legal and equitable jurisdiction there is very little difference in its practical results between proceedings in *mandamus* and mandatory injunction, the former being permissible when the action is to enforce the performance of duties existent for the benefit of the public, and the latter being confined usually to causes of an equitable nature, and in the enforcement of rights which solely concern individuals. But clearly the issue presented on this appeal is not what relief the State Court, under its practice, will grant in a proceeding in the form of *mandamus.* This is merely a matter of State practice, wherein the State Court may follow such course as it deems wise, or as the State law may permit. The question here presented is whether the Federal Court, under the acts of Congress, has original jurisdiction of the case presented by the complaint of the plaintiffs. This is a Federal question, which must be determined upon a consideration of Federal laws, independent of State rules. The distinction between law and equity is still preserved in the Federal Courts, and must be preserved under the Constitution of the United States. That the jurisdiction of the Federal Courts cannot be so affected, as to be impaired by State legislation, is clearly demonstrated by *Chief Justice Tanery* in 11 Howard, 669 (13 L. Ed., 859), and in *Thompson v. Central Ohio Railway Company,* 73 U. S., 134, where it was said, that is, in the latter case: "The Constitution of the United States and the acts of Congress recognize and establish the distinction between law and equity. The remedies in the courts of the United States are, at common law or in equity, not according to the practice of

23—180

the State courts, but according to the principles of common law and equity, as distinguished and defined in that country from which we derive our knowledge of these principles. *Robinson v. Chappell,* 3 Wheat., 212. 'And although the forms of proceedings and practice in the State courts shall have been adopted in the Circuit Court of the United States, yet the adoption of the State practice must not be understood as confounding the principles of law and equity, nor as authorizing legal and equitable claims to be blended together in one suit,' citing *Bennett v. Butterworth,* 11 How., 674." The Federal Court, in determining its jurisdiction, will disregard the name by which the plaintiffs have undertaken to describe their action, and also disregard the fact that they have undertaken to bring it as a proceeding at law instead of a suit in equity, and be controlled solely by the real nature of the action as disclosed by the pleadings. The acts of Congress of 3 March, 1915, ch. 90, provides: "That in case any of said courts shall find that a suit at law should have been brought in equity, or a suit in equity should have been brought at law, the court shall order an amendment to the pleadings, which may be necessary to conform them to their proper practice. Any party to the suit shall have the right, at any stage of the cause, to amend his pleadings so as to obviate the objection that his suit was not brought on the right side of the court. The cause shall proceed and be determined upon such amended pleadings." The extent to which the Federal Courts have gone in disregarding mere matters of form and description in determining questions of jurisdiction is shown by the several cases cited. The authorities which we have so far considered and cited clearly show that the United States District Court has original jurisdiction of the action presented in the complaint, and this being true, the State is powerless, either by legislation or through the practice prevailing in its courts, to restrict or abridge the jurisdiction of the Federal Court. In *Barrow v. Hunton,* 99 U. S., 80; 25 L. Ed., 407, *Mr. Justice Bradley* said: "If the State Legislature could, by investing certain courts with exclusive jurisdiction over certain subjects, deprive the Federal Courts of all jurisdiction, they might seriously interfere with the right of the citizens to resort to those courts. The character of the cases themselves is always open to examination for the purpose of determining whether, *ratione materiae,* the courts of the United States are incompetent to take jurisdiction thereof. State rules on the subject cannot deprive them of it." In *Mississippi Mills v. Cohn,* 150 U. S., 202; 37 L. Ed., 1052, *Mr. Justice Brewer* said: "It is well settled that the jurisdiction of the Federal Courts, sitting as courts of equity, is neither enlarged nor diminished by State legislation, though by it all difference in form of action be abolished; though all remedies be administered in a single action at law, so far at least as form is concerned,

all distinction between law and equity be ended, yet the jurisdiction of the Federal Courts, sitting as courts of equity, remains unchanged. Thus, in *Payne v. Hook,* 74 U. S., 7; Wall., 425, 430 (19 : 260, 261), it was said, citing cases: "We have repeatedly held 'that the jurisdiction of the courts of the United States over controversies between citizens of different States cannot be impaired by the laws of the States, which prescribe the modes of redress in their courts, or which regulate the distribution of their judicial power.' If legal remedies are sometimes modified to suit the changes in the laws of the States, and the practice of their courts, it is not so with equitable ones. The equity jurisdiction conferred on the Federal Courts is the same that the High Court of Chancery in England possess; is subject to neither limitation or restraint by State legislation, and is uniform throughout the different States of the Union.' . . . Without the assent of Congress, that jurisdiction cannot be impaired or diminished by the statutes of the several States regulating the practice of their own courts." In *Smyth v. Ames,* 169 U. S., 466; 42 L. Ed., 819, 838, *Mr. Justice Harlan* said: "One who is entitled to sue in the Federal Circuit Court may invoke its jurisdiction in equity whenever the established principles and rules of equity permit such a suit in that Court; and he cannot be deprived of the right by reason of his being allowed to sue at law in the State court on the same cause of action. It is true that an enlargement of equitable rights arising from the statutes of a State may be administered by the Circuit Court of the United States," citing *Kieley v. McGlynn,* 88 U. S.; 21 Wall., 503, 520; *Holland v. Challen,* 110 U. S., 15, 24; *Dick v. Foraker,* 155 U. S., 404, 415; *Bardon v. Land & River Improv. Co.,* 157 U. S., 327; *Rich v. Braxton,* 158 U. S., 375, 405. "But if the case in its essence be one cognizable in equity, the plaintiff—the required value being in dispute—may invoke the equity powers of the proper Circuit Court of the United States whenever jurisdiction attaches by reason of diverse citizenship or upon any other ground of Federal jurisdiction, citing *Payne v. Hook,* 74 U. S. (7 Wall., 425, 430); *McConihay v. Wright,* 121 U. S., 201, 205. If this position (as to the impotency of State legislation to interfere with, or curtail the jurisdiction of the Federal Courts) could be maintained, an important part of the jurisdiction conferred on those courts by the Constitution and the laws of Congress would be abrogated. A citizen of one State has the right to sue a citizen of another State in the courts of the United States, instead of resorting to a State tribunal, but of what value would that right be if the court in which the suit is instituted could not proceed to judgment, and afford a suitable measure of redress? The right would be worth nothing to the party entitled to its enjoyment, as it could not produce any beneficial result. But this objection to the jurisdiction of the Federal tribunals

has been heretofore presented to this Court, and overruled." In *Waterman v. Canal-Louisiana Bank & T. Co.,* 215 U. S., 33; 54 L. Ed., 80, *Mr. Justice Day,* referring to the former decision of the Court, said: "The general rule to be deduced from the cases in this Court is that, inasmuch as the jurisdiction of the courts of the United States is derived from the Federal Constitution and statutes, that, in so far as controversies between citizens of different States arises which are within the established equity jurisdiction of the Federal Courts, which is like unto the High Court of Chancery in England at the time of the adoption of the Judiciary Act of 1789 (1 Stat. at L., 73, ch. 20), the jurisdiction may be exercised, and is not subject to limitations or restraint by State legislation establishing other courts and giving them jurisdiction over similar matters. . . . In various forms these principles have been asserted in the following, among other cases, *Suydam v. Broadnax,* 14 Pet., 67; 10 L. Ed., 357; *Hyde v. Stone,* 20 How., 170, 175; 15 L. Ed., 874; *Green v. Creighton (Kendall v. Creighton),* 23 How., 90; 16 L. Ed., 419; *Payne v. Hook,* 7 Wall., 425; 19 L. Ed., 260; *Lawrence v. Nelson,* 143 U. S., 215; 36 L. Ed., 130; 12 Sup. Ct. Rep., 440; *Hayes v. Pratt,* 147 U. S., 557, 570; 37 L. Ed., 279, 284; 13 Sup. Ct. Rep., 503; *Byers v. McAuley,* 149 U. S., 608; 37 L. Ed., 867; 13 Supt. Ct. Rep., 906; and *Ingersoll v. Coram,* 211 U. S., 335; 53 L. Ed., 208; 29 Sup. Ct. Rep., 92, citing many other cases to the point."

In *Harrison v. St. Louis & S. F. R. Co.,* 232 U. S., 318, *Chief Justice White* said: "It may not be doubted that the judicial power of the United States, as created by the Constitution and provided for by Congress pursuant to its constitutional authority, is a power wholly independent of State action, and which therefore the several States may not by any exertion of authority in any form, directly or indirectly, destroy, abridge, limit, or render inefficacious. The doctrine is so elementary as to require no citation of authority to sustain it." But nevertheless he cites many cases decided in the United States Supreme Court.

The case which seems to be the most destructive of the plaintiffs' contention, in this part of the discussion, is *Re the Jarnecke Ditch,* 69 Fed. Rep., 161, it being manifestly in line with all the cases in the highest Federal Court. The Court said there: "But the Legislature of the State cannot, by making special provisions for the trial of particular controversies, nor by declaring such controversies to be special proceedings and not civil suits at law or in equity, deprive the Federal Courts of jurisdiction, nor prevent a removal. A State Legislature, if the Constitution of the State does not forbid it, may provide for the trial of any cause in some special way unknown to the methods of procedure at law or in equity. But, whatever the method of procedure, it would be none the less a trial if conducted by a tribunal having power to determine

questions of law and fact; and, if the subject-matter constituted a controversy involving the legal or equitable rights of parties, it might be cognizable in the courts of the United States. Unless this were so, the only thing the Legislature of a State would have to do to entirely destroy the jurisdiction of the Federal Courts and the right of removal would be to abolish all suits at law and in equity, and substitute special statutory methods of procedure. *Neither the Legislature nor the courts of a State have the power, by giving new names to legal proceedings, to change their essential character.* Courts will look beyond forms to the substance, and from it determine whether the controversy, in its essential nature, is a suit at law or in equity, as understood by the courts of the United States. *Railway Company v. Jones,* 29 Fed., 193, 196. From these considerations it follows that the decisions of the Supreme Court of the State are not controlling on the question now before the Court."

We need hardly consider the question as to the amount in controversy being sufficient to authorize the removal of the case to the United States District Court. This was not contested, nor was the sufficiency of the bond, the only matter in controversy being whether the Federal Court had jurisdiction in actions of *mandamus,* and the question as to the amount in controversy cannot be raised in the State Court, but belongs solely to the Federal Court. His Honor did not decline to remove the case upon the ground that the necessary jurisdictional amount was not involved, but, as stated in the order, solely upon the ground that in a proceeding for a *mandamus* the Federal Court has no original jurisdiction of the case. The petition for removal expressly alleges that the amount in controversy exceeds, exclusive of interest and cost, the sum of three thousand dollars ($3,000). If the plaintiffs desire to controvert this allegation, they can of course do so only in the Federal Court, upon a motion to remand. *Hyder v. R. R.,* 167 N. C., 587; *C. & O. Railroad Co. v. McCabe,* 213 U. S., 207 (53 L. Ed., 765).

There can be no doubt that the necessary jurisdictional amount is involved in this action. Montgomery's Manual of Federal Procedure (2 ed., sec. 174); *Bitterman v. L. & N. Railroad Co.,* 207 U. S., 204; *Glenwood L. & W. Co. v. Mutual L. H. & P. Co.,* 239 U. S., 121. It being admitted that this case has been duly docketed in the Federal Court, and is now pending for trial in that Court, comity between the Federal and State Courts strongly suggests that this Court reverse the order made by his Honor, Judge Ray, refusing to remove the case to the Federal Court, and leave the question of jurisdiction here presented to be determined by the Federal Court upon a motion to remand the case to the State Court, especially since the only question presented is the Federal question, as to whether the Federal Court has jurisdiction of this action, which is a question primarily and peculiarly proper to be

determined by the Federal Court, rather than by the State Court. In *Chesapeake & O. H. R. Co. v. McCabe,* 213 U. S., 217; 53 L. Ed., 765, *Justice Day,* after reviewing the former decisions of the Court, said: "From these decisions it is apparent that while the petitioner, in the event of an adverse decision in the State Court, may remain in that Court, and, after a final judgment therein, bring the case here for review, he is not obliged to do so. He may file the record in the Circuit Court of the United States, as was said by *Mr. Chief Justice Waite,* while the case is going on in the State Court. The Federal statutes then gives to the United States Circuit Court jurisdiction to determine the question of removability, and it has the power, not given to the State Court, to protect its Revised Statutes (U. S. Comp. State, 1901, page 581) by an injunction against further proceedings in the State courts. *Madison-ville Traction Co. v. St. Bernard Min. Co.,* 196 U. S., 239. In order to prevent unseemly conflict of jurisdiction it would seem that the State Court in such cases should withhold its further exercise of jurisdiction until the decision of the Circuit Court of the United States is reviewed in this Court. If the Federal jurisdiction is not sustained, the case will be remanded with instructions that it be sent back to the State Court as if no removal had been had. *Baltimore & O. R. Co. v. Koontz, supra.*"

In *Hollifield v. Tel. Co.,* 172 N. C., 720, the Court said: "We have uniformly decided in this Court that, when a verified petition contains facts sufficient under the law to entitle the applicant to a removal is filed, and is accompanied by a proper bond, the jurisdiction of the State Court is at an end, and that the issues of fact, if properly raised by the petition and papers in the cause, are to be tried and determined by the Federal Court and not by the State Court in which the action was brought. *Herrick v. R. R.,* 158 N. C., 307; *Lloyd v. R. R.,* 162 N. C., 485; *R. R. v. McCabe,* 213 U. S., 207; *Wecker v. National Enameling Co.,* 204 U. S., 176." In *Hyder v. R. R.,* 167 N. C., 587, the Court said: "The fact that the plaintiff alleged in his complaint that the Southern Railway Company was a domestic corporation, and also alleged the facts out of which he contends such corporate existence arose, makes this a different case from the *Hurst case* or the *Ice and Coal Co. case* above referred to; but even if that were not true, and if plaintiff had alleged directly, without stating the facts, that the Southern Railway Company was a domestic corporation and a citizen and resident of the State of North Carolina, when the defendant appeared, filed its petition to remove, and alleged that it was a citizen and resident of the State of Virginia, then a question arose which was determinable only by the United States Court. *Herrick v. R. R.,* 158 N. C., 310, and also the several cases cited in *Hurst v. R. R.,* 162 N. C., 368." *Justice Allen*

said, in *Cogdill v. Clayton,* 170 N. C., 528: "If the facts alleged in the petition are sufficient to justify a removal, it is the duty of the courts of the State to make the order for the removal, and it is for the Federal Court to inquire into and determine the truth of the facts alleged upon a motion by the plaintiff in the Federal Court to remove to the State Court. *Herrick v. R. R.,* 158 N. C., 307; *Rea v. Mirror Co.,* 158 N. C., 28; *Hyder v. R. R.,* 167 N. C., 588; *R. R. v. Cockrill,* 232 U. S., 146." *Justice Hoke* said, in *Lloyd v. R. R.,* 162 N. C., 494: "It is now uniformly held that when a verified petition for removal is filed, accompanied by a proper bond, and the same contains facts sufficient to require a removal under the law, the jurisdiction of the State Court is at an end. And in such case it is not for the State Court to pass upon or decide the issues of facts so raised, but it may only consider and determine the sufficiency of the petition and the bond. *Herrick v. R. R.,* 158 N. C., 307; *Chesapeake v. McCabe,* 213 U. S., 207; *Wecker v. National Enameling Co.,* 204 U. S., 176," etc.

We have discussed this case somewhat at length because of the great importance of the question at issue between the parties. We have made our citations to the decisions of the Federal Court of last resort, which must finally decide the matter, and to which we owe submission, under the Constitution of the United States, and under our own. Art I, sec. 5. When an application of removal of his case to the proper Federal Court complies with the formalities required by the act of Congress, he is entitled to have it transferred to that Court for trial, and the jurisdiction of the State Court, when it is pending thereunder, immediately ceases, and it has no right to proceed further in it unless for the purpose of granting the main relief or any ancillary remedy, as it has lost entirely all jurisdiction of it. When the highest Federal Court has decided similar cases and held that they are within the Federal jurisdiction, the State Court should the more readily and agreeably yield its possession of the case. We have shown that cases precisely similar, and nearly the same in legal contemplation, have been so decided. It was, therefore, the duty of the court below to remove the case and give up its control over it.

ALLEN, J., concurring in dissenting opinion.